**WRIGHT, FINLAY & ZAK, LLP**
Gwen H. Ribar, Esq. (SBN 188024)
Taline M. Keshishian, Esq. (SBN 233828)
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660
Tel. (949) 477-5050; Fax (949) 608-9142
gribar@wrightlegal.net; tkeshishian@wrightlegal.net

Attorneys for Defendants
SELENE FINANCE, LP; MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; and WILMINGTON SAVINGS FUND SOCIETY, FSB, doing
business as CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY,
BUT SOLELY AS TRUSTEE FOR BCAT 2015-14BTT

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH A. ROSENBERG, an individual and ALFREDO ROSENBERG, an individual, | Case No.: |
| Plaintiffs, | **NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331 and 1441(a)** |
| v. | **[FEDERAL QUESTION JURISDICTION]** |
| BANK OF AMERICA, N.A., a national banking association; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; MTC FINANCIAL INC., a California Corporation, d/b/a TRUSTEE CORPS; SELENE FINANCE, LP, a Delaware limited partnership; WILMINGTON SAVINGS FUND SOCIETY FSB, a Delaware Corporation dba CHRISTIANA TRUSTE, not in its individual capacity, but solely as trustee for BCAT 2014-4TT, | Complaint filed: August 24, 2015 |
| Defendants | |

///
///

1

NOTICE OF REMOVAL

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, ALL PARTIES AND THEIR ATTORNEYS OF RECORD, IF ANY:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1331 and 1441(a), Defendants SELENE FINANCE, LP; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and WILMINGTON SAVINGS FUND SOCIETY, FSB, doing business as CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR BCAT 2015-14BTT (collectively, the "Defendants") hereby remove to the United States District Court, the state court action described as follows:

<u>**THE ACTION BEING REMOVED**</u>

**1.**     On August 24, 2015, Plaintiffs RUTH A. ROSENBERG and ALFREDO ROSENBERG (collectively, the "Plaintiffs") filed a lawsuit in the Superior Court of California, County of Los Angeles ("State Court"), entitled *Rosenberg v. Bank of America, N.A., et al.* – Case No.: BC592230 (the "Action"). A true and correct copy of the Complaint on file in the Action is attached hereto as Exhibit 1.   No other documents have been filed with the State Court for the Action.

<u>**REMOVAL BASED ON FEDERAL QUESTION JURISDICTION**</u>

**2.**     The Action may be removed to the United States District Court, in accordance with 28 U.S.C §§ 1441(a), since this District Court has original jurisdiction over the Action pursuant to 28 U.S.C § 1331 stemming from the federal questions presented in Plaintiffs' Complaint. Specifically, the Action is a civil action, the adjudication of which requires an analysis and construction of the laws of the United States in that the Complaint is brought under, and requires an analysis of, 18 U.S.C. §§ 1341 and 1344, and of section 1692a(6) of the Federal Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

The remaining contentions in Plaintiffs' Complaint assert a violation of section 17200 of the California *Business and Professions Code*. The aforementioned state law claim is transactionally related to and arises out of the same common nucleus of operative facts as the federal claims stated above. Thus, the state law claim is subject to the supplemental jurisdiction of this District Court under 28 U.S.C. §1367(a), as it is part of the same case or controversy as the federal claims.

### NOTICE OF REMOVAL IS TIMELY

**3.** Defendant Selene Finance LP was served with a copy of the Complaint by process server on August 26, 2015, pursuant to the notice attached hereto as Exhibit 2. This Notice of Removal is being filed within thirty days therefrom. Therefore, removal is timely under 28 U.S.C § 1446(b). Defendants have not yet responded in any way to the Complaint in the Action.

### CONSENT OF OTHER PARTIES

**4.** Counsel for Defendants spoke with counsel for defendant MTC Financial Inc., d/b/a Trustee Corps ("MTC Financial") on Friday, September 18, 2015. Counsel for MTC Financial consented to this removal during that telephone discussion.

**5.** Defendants are unaware of service on defendant Bank of America, N.A., and the State Court's docket does not reflect appearance by any other defendants. *See* Exhibit 3. Accordingly, its consent to the removal is not required. *See* 28 U.S.C. § 1446(b)(2)(A); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (the requirement for consent applies "only to defendants properly joined and served in the action."); *Salverson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1428 (9th Cir. 1984).

**6.** Pursuant to 28 U.S.C. § 1446(a), Defendants file this Notice in the District Court of the United States for the district and division within which the Action is pending. A copy of this Notice of Removal will be promptly served

NOTICE OF REMOVAL

upon Plaintiffs' counsel and filed with the Superior Court of State of California, County of Los Angeles.  *See* 28 U.S.C. § 1446(a) and (d).

7.   This Notice of Removal is signed by Defendants' counsel pursuant to Federal Rule of Civil Procedure 11.  *See* 28 U.S.C. §1446(a).  By this Notice of Removal and the associated attachments, Defendants do not waive any objections they may have as to service, jurisdiction or venue, or any other defenses or objections it may have to this action.  Defendants intend no admission of fact, law or liability by this Notice, and expressly reserve all defenses, motions and/or pleas.

**WHEREFORE**, the Action is hereby removed from the State Court to this United States District Court, and removing Defendants pray that this District Court proceed, pursuant to 28 U.S.C. §1441, as well as any other relevant and applicable law, as if this Action had been originally filed in this District Court, and that the proceedings in the State Court be stayed in all respects.

Respectfully submitted,

WRIGHT, FINLAY & ZAK, LLP

Dated: September 25, 2015   By:   */s/Taline M. Keshishian*
Gwen H. Ribar, Esq.
Taline M. Keshishian, Esq.
Attorneys for Defendants
SELENE FINANCE, LP;
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.;
and WILMINGTON SAVINGS
FUND SOCIETY, FSB, doing
business as CHRISTIANA TRUST,
NOT IN ITS INDIVIDUAL
CAPACITY, BUT SOLELY AS
TRUSTEE FOR BCAT 2015-14BTT

4

NOTICE OF REMOVAL

# EXHIBIT "1"

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* Bank of America, N.A.

See Attachment "A" for Complete List of Defendants

**YOU ARE BEING SUED BY PLAINTIFF:** Ruth A. Rosenberg
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

See Attachment "A" for Complete List of Plaintiffs

> *FOR COURT USE ONLY*
> *(SOLO PARA USO DE LA CORTE)*
>
> **CONFORMED COPY**
> ORIGINAL FILED
> Superior Court of California
> County of Los Angeles
>
> AUG 2 4 2015
>
> Sherri R. Carter, Executive Officer/Clerk
>
> By Cristina Grijalva, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* CENTRAL DISTRICT<br><br>111 NORTH HILL STREET<br>LOS ANGELES, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br><br>BC 5 9 2 2 3 0 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Susan M. Murphy, Advocate Legal, 5455 Wilshire Blvd, #2119, Los Angeles, CA 90036 (323) 692-7499

| | | |
|---|---|---|
| DATE: August 21, 2015<br>*(Fecha)* | Clerk, by SHERRI R. CARTER<br>*(Secretario)* _CRISTINA GRIJALVA_ | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

AUG 2 4 2015

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Selene Finance, LP, a Delaware limited partnership

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☒ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
☐ by personal delivery on *(date):* 8-26-15

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**ATTACHMENT 'A' TO SUMMONS**

**(CITATION JUDICIAL) FORM NO. SUM-100**

RUTH A. ROSENBERG, an individual and ALFREDO ROSENBERG, an individual,

Plaintiffs,

V.

BANK OF AMERICA, N.A., a national banking association; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; MTC FINANCIAL INC., a California Corporation, d/b/a TRUSTEE CORPS; SELENE FINANCE, LP, a Delaware limited partnership; WILMINGTON SAVINGS FUND SOCIETY FSB, a Delaware Corporation dba CHRISTIANA TRUST, not in its individual capacity, but solely as trustee for BCAT 2014-4TT; and DOES 1 through 50, inclusive,

Defendants.

Susan M. Murphy (SBN 185335)
ADVOCATE LEGAL
5455 Wilshire Boulevard, Suite 2119
Los Angeles, CA 90036
Telephone: (323) 692-7499
Facsimile: (800) 878-7336
susan@advocatelegal.org

ATTORNEY FOR PLAINTIFFS,
ALFREDO ROSENBERG and
RUTH A. ROSENBERG

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

AUG 24 2015

Sherri R. Carter, Executive Officer/Clerk
By Cristina Grijalva, Deputy

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| RUTH A. ROSENBERG, an individual and ALFREDO ROSENBERG, an individual,<br><br>    Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA, N.A., a national banking association; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; MTC FINANCIAL INC., a California Corporation, d/b/a TRUSTEE CORPS; SELENE FINANCE, LP, a Delaware limited partnership; WILMINGTON SAVINGS FUND SOCIETY FSB, a Delaware Corporation dba CHRISTIANA TRUST, not in its individual capacity, but solely as trustee for BCAT 2014-4TT; and DOES 1 through 50, inclusive,<br><br>    Defendants | **CASE NO:   BC 5 9 2 2 3 0**<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES FROM RACKETEERING, CONSPIRACY TO ENGAGE IN A PATTERN OF RACKETEERING ACTIVITY AND RELATED CLAIMS:**<br><br>**1. BANK FRAUD AND CONSPIRACY TO COMMIT BANK FRAUD IN VIOLATION of 18 U.S.C. §1341**<br><br>**2. MAIL FRAUD AND CONSPIRACY TO COMMIT MAIL FRAUD IN VIOLATION of 18 U.S.C. §1344**<br><br>**3. VIOLATION OF 15 U.S.C. §1692a(6) FOR ATTEMPTING TO COLLECT A DEBT THAT IS OWED TO ANOTHER**<br><br>**4. *Violation of California B&P Code § 17200,et seq.***<br><br>Action filed:  August xx, 2015<br>**JURY TRIAL DEMANDED** |

# JURISDICTION

This Court has original jurisdiction over this complex civil action pursuant to the civil RICO remedies at 18 U.S.C. 1964 and the holdings of the U.S. Supreme Court in *Tafflin v. Levitt*, 493 U.S. 455 (1990) and the U.S. Court of Appeals for the Ninth Circuit in *Lou v. Belzberg*, 834 D.2d 730, (9th Cir. 1987) ("California State courts have concurrent jurisdiction of civil RICO claims"). This Court has subject matter jurisdiction over this action pursuant to California Business and Professions Code §17204 and California Code of Civil Procedure §410.10. This Court has Personal jurisdiction over the parties because all of the Defendants work, reside, and/or systematically do business in the County of Los Angeles.

In addition, the property secured by the Promissory NOTE and DEED OF TRUST, which is the subject of the Fraud allegations in this Complaint is a single family residence located in the County of Los Angeles (see Exhibit "A" attached hereto) and owned by Plaintiffs, RUTH A ROSENBERG, an individual and ALFREDO ROSENBERG, an individual ("Plaintiff" or Plaintiffs" as the case may be). The property address is 5351 Bindewal Road, Torrance, California 90505 (hereinafter "the Bindewal Road property"). (See Exhibit "B" attached hereto.) The Legal Description of the Bindewal Road Property is:

APN: 7530-5-14

LOT 3, IN BLOCK 7 OF TRACT NO. 15397, IN THE CITY OF TORRANCE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 332, PAGES 16 TO 19 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. (EX. A.)

///

///

///

## **INTRODUCTION**

1.      Plaintiffs bring this complex civil action against Defendant BANK OF AMERICA,

N.A., a national banking association ( "BOA") and Defendant MORTGAGE ELECTRONIC

REGISTRATION SYSTEMS, INC., a Delaware Corporation ( "MERS") for RICO remedies

authorized by Federal Statutes at 18 U.S.C. 1961 et seq. for declaratory and injunctive relief

and for statutory damages due to Defendants' falsely claiming to be the beneficiary of

Plaintiff's one-million dollar ($1,000,000.00) Promissory NOTE, which rightfully belongs to

the investors of the securitized trust into which Plaintiff's NOTE was securitized by the sponsor

to the securitization, which was Residential Capital, LLC ("RESCAP"), and/or the trustee and

other creditors of RESCAP's Chapter 11 Bankruptcy, and for Defendants' actions in forcing

Plaintiffs into foreclosure to hide the nature of Defendants' fraud in wrongfully claiming this

Promissory NOTE.[1]

2.      Plaintiffs bring this action pursuant to 15 U.S.C. §1692a(6) against Defendants BOA,

MERS, MTC FINANCIAL INC., a California Corporation d/b/a TRUSTEE CORPS

("TRUSTEE CORPS") and SELENE FINANCE LP, a Delaware limited partnership

("SELENE"), as servicer for Defendant, WILMINGTON SAVINGS FUND SOCIETY FSB, a

Delaware Corporation dba CHRISTIANA Trust not in its individual capacity, but solely as

trustee for BCAT 2014-4TT ("the CHRISTIANA Trust") for attempting to collect a debt that is

owed to another which they have been collecting on their own behalf since Defendant BOA

wiped Plaintiff's loan from the MERS system.

3.      Plaintiffs file this complaint for disgorgement of all funds wrongfully collected by

Defendant BOA.

---

[1] New York Southern Bankruptcy Court case number: 1:12-bk-12042

4.      Plaintiffs bring this action in equity to demand that Defendants BOA and the CHRISTIANA Trust provide proof of possession and/or legal transfer of Plaintiffs' Promissory NOTE pursuant to the Uniform Commercial Code and/or purchase of the debt from the RESCAP Chapter 11 Trustee.[2]

5.      Plaintiff brings this action for Compensatory, Special, General and Punitive damages, as well as attorneys' fees and treble damages pursuant to 19 U.S. Code §1964(c).

6.      Plaintiffs bring this action as a private attorney general with the force of government statute behind them for their own good as well as that of the public which benefits by transparency in all real property transactions. *Rotella v. Wood,* 528 U.S. 549, 559, 120 S. Ct. 1075, 1083 (2000).

## THE PARTIES

7.      Plaintiffs, RUTH ROSENBERG and ALFREDO ROSENBERG have at all times mentioned herein lived in the County of Los Angeles, State of California.  Plaintiffs became owners of the Bindewal Road property by Grant Deed recorded (Doc. No. 952006785) with the Los Angeles County Recorder (hereinafter "LACR") on December 18, 1995 as husband and wife as Joint Tenants. (See Exhibit "A" attached hereto.)

8.      Defendant, BANK OF AMERICA, N.A. ("BOA"), successor by merger to BAC HOME LOANS SERVICING LP f/k/a COUNTRYWIDE HOME LOANS SERVICING LP, is a national banking association organized under the laws of the United States ("COUNTRYWIDE").  Defendant, BOA does business in Los Angeles County, California, as a mortgage lender *and servicer.*   The misconduct of Defendant BOA, that has led to this

---

[2] Transfer of a negotiable instrument under Article 3 occurs through delivery of the instrument to the transferee "for the purpose of giving the person receiving delivery the right to enforce the instrument." UCC §3-203(a); "...but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument." UCC §30203(b).

litigation is 1) Defendant BOA recorded an ASSIGNMENT OF THE DEED OF TRUST from the original beneficiary which was HOMECOMINGS FINANCIAL NETWORK INC. ("HOMECOMING") to themselves (BOA) without consideration to the securitized trust into which Plaintiff's loan was sold, 2) Defendant BOA wiped all evidence of the securitization of Plaintiff's loan from the MERS system, and 3) Defendant BOA utilized MERS as (claimed) nominee of HOMECOMING to record a NOTICE OF TRUSTEE'S SALE on behalf of HOMECOMING, which was actually to benefit Defendant BOA. (EX. J.)

9.      HOMECOMINGS FINANCIAL NETWORK INC. (HOMECOMING) was a division of GMAC, which was the financial arm of General Motors heavily involved in subprime lending from 1985 to 2005.[3] In 2005, GMAC organized all its mortgage operations under a new holding company, Residential Capital (RESCAP), which, in addition to originating, servicing, purchasing, and selling residential mortgages *also* began to bundle and securitize residential mortgages through a wholesale funding channel that came from Wall Street investment firms.[4] In 2006, a time of explosive growth for securitization and subprime lending, GMAC was the nation's tenth largest mortgage producer originating nearly $162 billion in home loans.[5]

10.     COUNTRYWIDE BANK, FSB (COUNTRYWIDE) was a banking association acquired by BOA in 2009 and is currently an inactive corporation.[6]

11.     Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. is a Delaware corporation (known collectively hereinafter with their parent company MERSCORP

---

[3] Special Inspector General for the Troubled Asset Relief Program, "Taxpayers Continue to Own 74% of GMAC (Rebranded as Ally Financial Inc.) from the TARP BAILOUTS," January 30, 2013 pages: 4-5; *Available at:* (https://www.sigtarp.gov/Audit%20Reports/Taxpayers_GMAC.pdf).
[4] See FN 3 at P. 5.
[5] Inside Mortgage Finance Publications, Inc., *The 2009 Mortgage Market Statistical Annual.*
[6] FDIC website *Available at:* (https://www2.fdic.gov/idasp/confirmation_outside.asp?inCert1=33143).

Holdings Inc. as "MERS") which is a United States shell corporation with their state of incorporation as Delaware and their main offices in Virginia, which is owned by Defendant, BOA.[7]  Plaintiff's DEED OF TRUST was issued according to the MERS scheme, which includes a MERS mortgage with a MERS MIN (mortgage identification number) as well as a MERS database that tracks servicing rights based on these MIN numbers for the benefit of its corporate owners, which are servicers like Defendant BOA.[8]  The MERS database tracks servicing rights only although information on beneficiary/ investors may be included anecdotally.[9] Defendant, MERS is named on mortgages as "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns" and "the beneficiary under this Security Instrument" which enables MERS to claim to be mortgagee of record in a nominee capacity and avoid the need to record the multiple sales and ASSIGNS between actual beneficiaries that must occur for securitization [10] (See Exhibit "B," P.2); (See also, *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 263, 129 Cal. Rptr. 3d 467 [2011].)  The MERS scheme was devised by sellers and servicers of residential mortgage-backed securities, such as Defendant BOA, to circumvent the public recording system, avoid recording fees, and to keep track of servicing rights for securitized mortgages through a computer database.[11]

12.     Defendant MTC FINANCIAL INC. a California Corporation, d/b/a TRUSTEE CORPS (TRUSTEE CORPS), which does business in Los Angeles County, California, as a foreclosure trustee on deeds of trust as described herein.

---

[7] MERS Board of Directors, Available at: (http://www.mersinc.org/about-us/board-of-directors)
[8] Christopher Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System*, 78 U. Cin. L. Rev. 1361 (2010).
[9] Christopher Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Review 126.
[10] FN 8 at 1362.
[11] FN 8 at 1362.

13.    Defendant SELENE FINANCE LP, a Delaware limited partnership (SELENE) is a mortgage servicer founded in 2007 and located in Houston Texas. Plaintiffs are informed, believe, and thereupon allege that Defendant SELENE is currently collecting on their debt for the benefit of the CHRISTIANA Trust.

14.    Defendant WILMINGTON SAVINGS FUND SOCIETY FSB, DBA CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR BCAT 2014-4TT (the CHRISTIANA Trust) is believed to be an investment trust (not securitized) that purchased Plaintiff's debt from Defendant BOA.

15.    Plaintiffs do not know the true names, capacities or basis for liability of Defendants sued herein as DOES 1 through 50, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right, title or interest in the Tuxford Property. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed, believe and therefore allege that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants was responsible in some manner for the injuries and damages to Plaintiffs so alleged and that such injuries and damages were proximately caused by such Defendants and each of them. Plaintiffs are informed, believe and thereon allege that, at all times herein mentioned, each of the Doe Defendants were the agents, employees, servants and/or the joint-venturers of Defendants and in performing the actions alleged herein, were acting within the course and scope of such agency, employment and/or joint venture relationship.

///

///

### *The Conspiracy*

16.     The fraud that occurs in this case is a direct result of the MERS scheme, which includes the ability of employees of MERS members, such as Defendant BOA to download corporate resolutions to make themselves corporate officers of MERS and to act under the authority of MERS without oversight.[12] This was done by Defendant BOA's employee Dominique Johnson ("JOHNSON") as "Assistant Secretary of MERS" to ASSIGN Plaintiff's Deed of Trust from HOMECOMING to Defendant BOA, without the authority of a beneficiary.[13] (See Exhibit "F" herein.)  Defendant, BOA then used this scheme to record a NOTICE OF TRUSTEE'S SALE, whereby they claimed Defendant, MERS to be nominee of the beneficiary HOMECOMING with authority to conduct a foreclosure sale. (See Exhibit "J" herein.)  Defendant, MERS regularly conducts foreclosure sales as nominee for a beneficiary, so that this NOTICE OF TRUSTEE SALE does not appear unusual *except for the fact that* the NOTICE OF TRUSTEE'S SALE was recorded after Defendant BOA had recorded an ASSIGNMENT from HOMECOMING to themselves, after Defendant BOA wiped all record of the loan from the MERS system, and after HOMECOMING was in a Chapter 11 Bankruptcy. (See Exhibits "F," "G," & "J" herein.)  This fraud also occurred simultaneously with Defendant BOA selling Plaintiff's loan to a subsequent beneficiary which was Defendant the CHRISTIANA TRUST, which ASSIGNMENT they did not record.

### FACTUAL ALLEGATIONS

17.     On or about June 30, 2006, Plaintiff ALFREDO ROSENBERG granted the Bindewal Road property to Plaintiff RUTH ROSENBERG as a married woman as her sole and separate property by INTERSPOUSAL GRANT DEED. (See Exhibit "B" herein.)

---

[12] FN 8 at 1390-1391.
[13] FN 8 at 1390-1391.

18.     On or about June 30, 2006, Plaintiff RUTH ROSENBERG, originated, as a married woman as her sole and separate property, a Deed of Trust (LACR Doc. No. 061452151) and Promissory NOTE for one million dollars ($1,000,000) against the Bindewal Road property in favor of HOMECOMING. (See Exhibit "C" herein.)

19.     On or about June 30, 2006, Plaintiff's DEED OF TRUST was a four (4) party instrument with (1) Plaintiff as Trustor, (2) Alliance Title Company, as Trustee, (3) MERS, as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns" and as "the beneficiary under this security instrument," and (4) HOMECOMING as Lender. (ID.)  Plaintiff's Deed of Trust had a MIN number (100062604294902871) signifying that: 1) it had been previously registered in the MERS system; and 2) that it was intended to be bundled together with other loans and securitized by the sponsor which was RESCAP.

20.     On or about June 30, 2006, Plaintiff had a subprime loan known as a "neg-am" loan that gave only one (1) payment amount on each mortgage statement, which would cause negative amortization and an increased principal balance at the end of each year.[14] (See Exhibit "D" herein.)

21.     Beginning on or about July 1, 2006, Plaintiffs made their mortgage payments to HOMECOMING by mail.

22.     On or about June 1, 2007, Plaintiffs received a letter from COUNTRYWIDE instructing Plaintiffs to send COUNTRYWIDE their payments and that Plaintiff's debt was now $1,070,000.00.

---

[14] Definition at Consumer Financial Protection Bureau website *Available at*:
(http://www.consumerfinance.gov/askcfpb/103/what-is-negative-amortization.html)

23.    Beginning on or about July 1, 2007 Plaintiffs made their mortgage payments to COUNTRYWIDE, as servicer for the beneficiary which was a securitized trust.

24.    On or about December 1, 2007, GMAC became ALLY BANK and shifted all its bad divisions, including HOMECOMING, to a new subsidiary called RESCAP.[15]

25.    On or about August 1, 2008, RESCAP, the parent company of HOMECOMING, shut down and notified all brokers that they would no longer originate HOMECOMING loans through their wholesale channel. Plaintiffs are informed, believe, and thereupon allege that HOMECOMING received funding for Plaintiff's loan from its RESCAP Warehouse Credit line, but that problems arose with the securitization which occurred at around the same time that RESCAP was closing its offices and dismissing staff. On August 1, 2008, Plaintiffs' allege on information and belief, that their loan was a failed securitization and that the originator and/ or sponsor to the securitization, which was HOMECOMING (and/ or RESCAP) was required to buy the debt back from the securitized trust that purchased it, but that this did not occur prior to the shutdown of HOMECOMING by RESCAP.

26.    On August 1, 2008, Plaintiffs allege that the shutdown of HOMECOMING removed all authority of Defendant MERS to act as nominee for HOMECOMING. Plaintiffs allege that despite this lack of authority, their loan remained in the MERS system with the servicing rights assigned to COUNTRYWIDE, since the MERS system tracks servicing rights for the benefit of its servicer owners and only anecdotally includes beneficial ownership.[16]

27.    On or about September 1, 2008, Plaintiff was approximately three (3) months in arrears on her mortgage and was attempting to get a loan modification with COUNTRYWIDE. Due to

[15]The Wall Street Journal, May 14, 2012: "ResCap Files for Protection Under Chapter 11," by Andrew R. Johnson, *Available at:* (http://www.wsj.com/articles/SB10001424052702304192704577403782887891126) See also: http://rescapliquidatingtrust.com/
[16] FN 8 at 1362.

negative amortization Plaintiff's one million dollar ($1,000,000.00) mortgage now had a

principal balance of one million seventy four thousand four-hundred sixty nine dollars and

nineteen cents ($1,074,469.19). (See Exhibit "D" herein.)

28.    On or about April 27, 2009, COUNTRYWIDE merged into BOA, making Defendant

BOA one of the largest mortgage servicers in the United States.[17]  Plaintiffs are informed,

believe, and thereupon allege that Defendant BOA took over the servicing rights to Plaintiff's

loan from COUNTRYWIDE, which took over servicing from HOMECOMING amidst

confusion and the closing down of HOMECOMING and that Defendant BOA sought to benefit

by this confusion by continuing to collect on Plaintiff's mortgage payments as a servicer and

beneficiary without ASSIGNMENT from, or compensation to, the actual beneficiary.

29.    On or about May 1, 2009, Plaintiff began receiving mortgage statements from

Defendant BOA that also allowed Plaintiff to make *only* the minimum payment, which would

continue to negatively amortize her loan. (See Exhibit "E" herein.)  On or about August 28,

2009, Plaintiff had a past due balance of fifty-six thousand two hundred fifty-five dollars and

ninety eight cents ($56,255.98) and a principle balance of one million seventy-four thousand

four hundred sixty-nine dollars and nineteen cents ($1,074,469.19). (See Exhibit "E" herein.)

This statement also showed a past-due balance of $56,255.58. (See Exhibit "E" herein.)

30.    On or about September 10, 2009, Plaintiffs agreed to an interest-only loan modification

with Defendant BOA's agent Worzorsky that increased their principle balance by

approximately ninety-eight thousand dollars ($98,000.00) with approximately thirty thousand

dollars ($30,000.00) of this amount to be applied to an escrow account to pay past property

---

[17] FDIC website: *Available at:* (https://www2.fdic.gov/idasp/confirmation_outside.asp?inCert1=33143); Form 8-K for Countrywide Financial Corporation: *Available at:* (http://www.sec.gov/%20archives/edgar/data/25191/000095014408005376/g14113k2e8vk.htm).

taxes. This loan modification left Plaintiffs with a total principle balance of one million one

hundred and seventy-three thousand, one-hundred eighty dollars and forty-four cents

($1,173,180.44), it eliminated the negative amortization feature of Plaintiff's loan, and it gave

Plaintiff a five (5) year interest rate freeze to 3.125%, resulting in a promised payment of three

thousand fifty-five dollars and fifteen cents ($3,055.15). (See Exhibit "F" herein.)

31.     On or about September 11, 2009, Plaintiffs received the modification and the entire

ninety-eight thousand dollars ($98,000.00) was (mistakenly) called "interest" and not applied to

escrow. (See Exhibit "F" herein.)

32.     On or about October 1, 2009, Plaintiffs began paying Defendant BOA the payment

stated on their loan modification which was three thousand fifty-five dollars and fifteen cents

($3,055.15).

33.     On or about December 18, 2009, Plaintiff's Account Statement from Defendant BOA

mistakenly showed the ninety-eight thousand dollars ($98,000.00) amount as a "principal

adjustment" and also showed a negative escrow balance of twenty-seven thousand three-

hundred seventy six dollars and thirty cents ($27,376.30). (See Exhibit "G" herein.)

34.     On or about December 18, 2009, Plaintiff called Defendant BOA and spoke to "Tanya"

regarding the ninety-eight thousand dollars ($98,000.00) in "interest" which did not reflect the

thirty thousand dollars ($30,000.00) that was to be applied to the escrow account to pay past

property taxes. "Tanya" told Plaintiff that as soon as the documents were put on Defendant

BOA's system Plaintiff would receive a "good faith" statement breaking down the ninety-eight

thousand dollars ($98,000.00) as had been discussed and agreed to with Worzorsky. Plaintiffs

called repeatedly over the next few weeks requesting this "good faith" statement with no

success. On or about September 12, 2009, Plaintiffs are informed, believe, and thereupon

allege that Defendant BOA was collecting payments on behalf of themselves and not

forwarding Plaintiff's payments to any beneficiary.

35.    On or about June 21, 2010, Defendant BOA's agent Agatha Sarnicky (SARNICKY)

told Plaintiff that the payment of three thousand fifty-five dollars and fifteen cents ($3,055.15)

would not cover the escrow and gave Plaintiff an increased payment of three thousand three-

hundred and eighty-eight dollars ($3,388.00). Defendant's agent SARNICKY also told Plaintiff

that the loan modification he received was from a special "triage" style department that was set

up to transfer all of the loans for which COUNTRYWIDE retained the servicing rights to

Defendant BOA, which was disbanded after September 31, 2009 and that currently there was

"no trace" of Plaintiff's loan. Defendant BOA's agent SARNICKY advised Plaintiff to "get an

attorney."

36.    On or before March 1, 2011, Plaintiff alleges that Defendant BOA removed Plaintiff's

loan from the MERS computer database to hide the connection to the securitized trust that

purchased the NOTE and was the beneficiary of the failed securitization entitled to repayment

of the debt by RESCAP. ((See Exhibit "F" herein.)

37.    Plaintiffs allege that Defendant BOA's actions in wiping the history of their loan from

the MERS database was a predicate act of Bank Fraud pursuant to 18 U.S. Code §1344,

constituting theft of this debt from the creditors of the RESCAP bankruptcy. Defendant BOA

had also been collecting payments for the prior two (2) years on their own behalf in violation of

15 U.S.C. §1692(6), which prohibits attempting to collect a debt that is owed to another.

38.    On or about May 1, 2010, Defendant BOA began sending delinquency NOTICES to

Plaintiffs. Plaintiff was not in default on the loan modification at this time having made a

mortgage payment every month since the inception of their loan modification on September 1,

2009 and having made the increased payments as requested. These delinquency NOTICES were an attempt by Defendant BOA to collect a debt that was owed to another in violation of 15 U.S.C. §1692a(6) and also to force Plaintiffs into foreclosure so as to hide their fraud.

39.     On or about May 1, 2010, Plaintiffs sent a letter to Defendant BOA, requesting the good faith breakdown of the ninety-eight thousand dollars ($98,000.00).

40.     On or about March 5, 2011, Defendant BOA told Plaintiff that the prior payment of three thousand three-hundred and eighty-eight dollars ($3,388.00) would not cover the escrow payment and that Plaintiff had to pay a new payment of three thousand eight hundred eighty-eight dollars ($3,888.00) to cover the current escrow payment and prior outstanding balance. Defendant BOA told Plaintiff that the new payment of three thousand eight hundred eighty-eight dollars ($3,888.00) would continue for the next five (5) years or sixty (60) months until the escrow shortfall was paid up and it would then return to a payment of three thousand three-hundred and eighty-eight dollars ($3,388.00). This was the second (2nd) of two (2) attempts by Defendant BOA to force Plaintiffs into foreclosure by arbitrarily upping the mortgage payment. On or about March 5, 2011, despite this arbitrary increase, Plaintiffs began making the new payment of three thousand eight-hundred eighty-eight dollars ($3,888.00).

41.     On or about April 13, 2011, the United States of America, Department of Treasury, Office of the Comptroller of the Currency, the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, the Federal Housing Finance Agency, and Defendant MERS (and their parent company MERSCORP Holdings, Inc.) entered into a consent decree whereby Defendant MERS admitted that it failed to exercise appropriate oversight, management supervision and corporate governance and failed to devote adequate resources, staffing and training to ensure proper administration and delivery of its mortgage

related services to its members subject to regulation by the aforementioned agencies and departments of the United States Government, which exposed MERS and MERSCORP and their members to "unacceptable operational, compliance, legal and reputational risks."[18]

42.     On April 15, 2011 Defendant MERS, as nominee for HOMECOMING, recorded with the Los Angeles County Recorder (doc. no: 20110550968) an ASSIGNMENT OF THE DEED OF TRUST from HOMECOMING to Defendant BOA, that was authorized by JOHNSON as an officer of Defendant MERS, employee of Defendant BOA and mailed to Plaintiffs. ((See Exhibit "F" herein.)

43.     This authorization by Defendant BOA's agent JOHNSON occurred without the authority of any beneficiary and without oversight by Defendant MERS as is consistent with the findings of the consent decree released the very same month.[19]  This authorization occurred concurrently with the actions of Defendants BOA and MERS to wipe all evidence of the securitization of Plaintiff's loan from the MERS system, thereby eliminating the paper trail to Plaintiffs' beneficiary.

44.     On April 15, 2011, Defendants MERS and BOA committed *mortgage fraud* in violation of California Penal Code §532f(a)(4) since Defendant BOA was not the beneficiary and had not received an ASSIGNMENT from any beneficiary since 1) HOMECOMING was a defunct corporation without power to ASSIGN, 2) HOMECOMING was no longer a signatory of the MERS system from which Plaintiff's loan had been deleted, and 3) HOMECOMING was not the current beneficiary since the debt was owed to the securitized trust that purchased Plaintiff's loan from RESCAP's wholesale channel and not to the originator HOMECOMING.

---

[18] OCC No. AA-EC-11-20, April 12, 2011; In the Matter of: MERSCORP, Inc. and the Mortgage Elec. Sys., Inc., Reston Va.; *Available at:* (http://www.scribd.com/doc/61286937.OCC-Consent-Order-MERS).
[19] See FN. 18.

This was a use of the recording statutes to commit a predicate act of bank fraud pursuant to 18 U.S. Code §1344 to deprive the true creditor, which was the securitized trust that purchased Plaintiff's loan from RESCAP. This was also a predicate act of Mail Fraud in violation of 18 U.S.C. §1341, since the ASSIGNMENT was mailed to Plaintiffs and recorded with the Los Angeles County Recorder.

45.   On October 17, 2011, Defendant BOA, on its own authority as the (claimed) current beneficiary recorded a SUBSTITUTION OF TRUSTEE with the Los Angeles County Recorder (20111399206) replacing the original trustee which was ALLIANCE TITLE COMPANY with RECONTRUST COMPANY N.A. (RECONTRUST) which is a trustee company that is owned by Defendant BOA. ((See Exhibit "H" herein.)

46.   This was a violation of California Civil Code §2934a (a)(1) which states that only the beneficiary or the agent of the beneficiary can record a SUBSTITUTION OF TRUSTEE and also mortgage fraud in violation of California Penal Code §532f(a)(4) for recording false documents with the County Recorder known to be false since Defendant BOA fraudulently ASSIGNED beneficiary status to themselves and *then* recorded a SUBSTITUTION to RECONTRUST as Trustee. ((See Exhibit "H" herein.)

47.   Plaintiffs allege that Defendant BOA committed mortgage fraud in order to conduct a foreclosure sale against the Bindewal Road property on behalf of themselves as beneficiary and that this was a predicate act of bank fraud pursuant to 18 U.S. Code §1344 to deprive the creditor/debtor which was a securitized trust and/or RESCAP and/ or the Chapter 11 bankruptcy trustee. This was also a predicate act of Mail Fraud in violation of 18 U.S.C. §1341 since Plaintiffs received this SUBSTITUTION by mail.

48.   On October 17, 2011, RECONTRUST recorded a NOTICE OF DEFAULT (document number: 20111399207) with the Los Angeles County Recorder stating arrears of thirty-nine thousand nine hundred forty-five-dollars and eighty cents ($39,945.80) owed to Defendant BOA as the current beneficiary. ((See Exhibit "I" herein.)

49.   This was a false recording since at the time that Plaintiffs received this NOTICE OF DEFAULT they had not missed a mortgage payment since the first modification payment on October 1, 2009.

50.   On or about November 1, 2011, Defendant BOA began to refuse Plaintiff's mortgage payments.  Plaintiff ALFREDO ROSENBERG attempted to make payments on-line, by telephone, and in Defendant's branch office, but was told he had to call a special department and telephone number that no one answered.  Defendant BOA reported to the credit agencies that Plaintiff's last mortgage payment was on February 2011, which was a false statement and a further violation of 15 U.S.C. §1692(6).

51.   On November 3, 2011, Plaintiffs filed a civil lawsuit against Defendant BOA for Fraud, Breach of Contract, and Wrongful Foreclosure which was case number BC472813.  Defendant BOA removed to Federal Court, case number CV11-10597-CAS (SWx) which was dismissed without prejudice.

52.   On or about May 14, 2012, RESCAP and its subsidiary HOMECOMING went into Chapter 11 Reorganization which affected every asset and liability of the Corporation, including every loan by HOMECOMING that was securitized by GMAC and shifted to RESCAP, which included Plaintiff's loan.

53.     Plaintiffs allege that their loan remains a debt and the Bindewal property remains collateral for this debt, which is an asset of RESCAP and HOMECOMING's Chapter 11 reorganization.[20]

54.     On or about May 14, 2012, Plaintiff is informed, believes, and thereupon alleges that the loan was not included in RESCAP's Chapter 11 Bankruptcy, in part because it had been removed from the MERS system by Defendant BOA.

55.     On or about December 13, 2013, Plaintiffs received a mortgage statement from Defendant BOA in the amount of three thousand six hundred twenty-seven dollars and forty-five cents ($3,627.45).  Plaintiff made payments from January 1, 2014 until June 1, 2014 by phone or by check.  On or about June 1, 2014, Defendant BOA again refused their payment.

56.     On or about June 24, 2015, Defendant TRUSTEE CORPS recorded (document number: 20150755631) a NOTICE OF TRUSTEE's SALE stating an (estimated) balance of $1,375,772.21 (one million three-hundred-seventy-five thousand seven-hundred-seventy-two dollars and twenty-one cents) owed to the beneficiary, which Defendant TRUSTEE CORPS named as Defendant MERS "as nominee for HOMECOMINGS FINANCIAL NETWORK, INC, as Beneficiary." (See Exhibit "J" herein.) This was mortgage fraud in violation of California Penal Code §532f(a)(4) since: 1) Plaintiff's loan had been removed out of the MERS system, 2) the original beneficiary HOMECOMING is currently under the jurisdiction of the New York bankruptcy court subject to a Chapter 11 Reorganization, 3) MERS could not have been acting as a nominee for HOMECOMING pursuant to the Chapter 11 Reorganization, and 4) Defendant MERS was actually acting on behalf of Defendant BOA, which was the ASSIGNED beneficiary.  Plaintiffs allege that Defendant BOA used MERS, which it owns and

---

[20] New York Southern Bankruptcy Court case number: 1:12-bk-12042

controls, to claim authority on behalf of HOMECOMING. (See Exhibit "J" herein.) This was evidence of bank fraud pursuant to 18 U.S. Code §1344 and civil conspiracy to commit Bank Fraud in violation of 18 U.S. Code §1962(d) since Defendant MERS was acting in conspiracy with Defendant BOA to defraud the beneficiary of Plaintiff's loan, which is the securitized trust that purchased Plaintiff's loan from RESCAP and/or RESCAP, and/ or the Chapter 11 trustee.

57.    On or about June 21, 2015, the June 30, 2015 sale date named on the NOTICE OF TRUSTEE's SALE was postponed to August 20, 2015 and later cancelled.

58.    On or about July 25, 2015, Plaintiffs received a NOTICE that their new beneficiary was Defendant the CHRISTIANA Trust and that the servicing of their loan had been transferred to Defendant SELENE. No ASSIGNMENT to the CHRISTIANA Trust was recorded in the Los Angeles County records and the sale of Plaintiff's debt to the CHRISTIANA Trust by Defendant BOA, took place concurrently with the NOTICE OF TRUSTEE SALE recorded on June 24, 2015 by Defendant BOA and Defendant MERS, which claimed that Defendant MERS was nominee for beneficiary HOMECOMING. (See Exhibit "I" hereto.)

59.    On August 13, 2015, Plaintiffs received a call from Defendant SELENE's agent Luis Quintero (QUINTERO), as a debt collector attempting to collect a debt. Defendant's agent QUINTERO demanded a mortgage payment from Plaintiffs.

60.    On or about August 21, 2014 Plaintiffs received a statement from Defendant SELENE claiming a new principal balance of one-million-one-hundred-seventy-three thousand-one-hundred eighty dollars and forty-four cents ($1,173,180.44), arrears of three-hundred forty-five-thousand four-hundred-sixty one dollars and fifty cents ($345,461.50). This mortgage bill also demanded a principle and interest payment of seven thousand and one dollar and fifty cents ($7,001.77).

### FIRST AND SECOND CAUSES OF ACTION
*Defendants BOA & MERS*
Bank Fraud -18 U.S.C. §1341
Mail Fraud - 18 U.S.C. §1344
A Pattern of racketeering activity and Conspiracy
in the collection of an unlawful debt
18 U.S.C. 1962(c) & 1962(d)

60.　Plaintiffs hereby allege and incorporate herein by reference each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

61.　Title IX of the Organized Crime Control Act of 1970 18 U.S.C. §1962(c), prohibits a person from conducting the affairs of an enterprise through a pattern of racketeering. (18 U.S.C §1961-1968.) Congress defined "racketeering activity" in 18 U.S.C. §1961(1) with a list of state and federal predicate crimes two of which are Mail Fraud and Bank Fraud. (18 U.S.C. §1341; 18 U.S.C. §1344.) Mail Fraud involves the use of the U.S. mail "to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises..." (18 U.S. Code §1341 – "Frauds and swindles.") Bank Fraud is against an individual that "knowingly executes or attempts to execute, a scheme or artifice – (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses representations, or promises." (18 U.S.C. §1344.)

62.　The Supreme Court has found that a RICO enterprise need only be a "continuing unit that functions with a common purpose. (*Boyle v. United States,* 556 U.S. 938, 948 (2009).)

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods-by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different

times. The group need not have a name, regular meetings, dues, established rules
and regulations, disciplinary procedures, or induction or initiation ceremonies.
While the group must function as a continuing unit and remain in existence long
enough to pursue a course of conduct, nothing in RICO exempts an enterprise
whose associates engage in spurts of activity punctuated by periods of
quiescence. Nor is the statute limited to groups whose crimes are sophisticated,
diverse, complex, or unique; for example, a group that does nothing but engage
in extortion through old-fashioned, unsophisticated, and brutal means may fall
squarely within the statute's reach. (*Id*, at 948.)

63.     The predicate acts of Bank Fraud and Mail Fraud committed in conspiracy by
Defendants BOA and MERS were for the common purpose of claiming that Defendant BOA
was the beneficiary of Plaintiff's debt. Defendant BOA's fraud was committed in a two-tiered
way that started with a corporate decision to wipe the loan from the MERS system, which was
later given effect by multiple ad hoc decisions of Defendant BOA's loss mitigation department
to fast-track the foreclosure rather than modify. However this was carried out, it started with
the intention to defraud the investors of the securitized trust that purchased Plaintiff's loan from
RESCAP as well as the bankruptcy creditors in RESCAP's Chapter 11 Bankruptcy by these
acts which were:

### April 15, 2011

1. Defendant BOA recorded an ASSIGNMENT OF THE DEED OF
TRUST from HOMECOMING to themselves with the Los Angeles County
Recorder and mailed it to Plaintiffs to defraud the securitized trust that was the
true beneficiary. (¶42).

2. Defendants BOA and MERS removed all evidence of Plaintiff's loan from the MERS system to hide any link to RESCAP, HOMECOMING, or the Chapter 11 Reorganization. (¶42.)

**October 17, 2011**

3. Defendant BOA recorded a SUBSTITUTION OF TRUSTEE on their own authority as beneficiary when they were not the beneficiary and mailed it to Plaintiffs. (¶s45-46.)

4. Defendant BOA recorded a NOTICE OF DEFAULT on their authority as beneficiary when they were not a beneficiary and mailed it to Plaintiffs. (¶48.)

**June 24, 2015**

5. Defendant MERS (in conspiracy with Defendant BOA) recorded a NOTICE OF TRUSTEE'S SALE naming themselves as "nominee" for HOMECOMING which was in a Chapter 11 bankruptcy since May 14, 2012. (¶56.)

64.    A "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of Title IX of the Organized Crime Control Act of 1970, and the last of which occurred within ten (10) years (absent imprisonment) of the prior act of racketeering activity. 18 U.S.C. §1961(5).  The predicate acts must be "related" and "continuous" within the meaning of *H.J. Inc. v. Nw Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900 (1989) and its progeny including *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995).  The Plaintiffs must show that the pattern includes predicate acts that are related *and*

that they amount to or pose a threat of continued criminal activity. *Nw Bell Tel. Co., supra* at 239.

65.     The predicate acts listed above prove a pattern of racketeering activity since Defendants BOA, MERS, and SELENE are all attempting to collect a debt by claiming to be either beneficiary (BOA), servicer of the beneficiary (BOA & SELENE), or "nominee" of the beneficiary (MERS) when they are none of these things and in fact have no connection to the debt except having acted as servicer to a beneficiary that failed to properly securitize Plaintiff's loan during the time that they were shutting down and filing bankruptcy. The pattern includes the act of wiping all evidence of securitization from the MERS database which Plaintiffs allege was done by Defendants BOA and MERS in conspiracy. These predicate acts are related, being all part of an attempt to defraud the actual beneficiary which is a financial institution and they pose a continued threat of criminal activity since the attempts to take this debt, and the asset that secures it, from the beneficiary are ongoing. (*H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232, 109 S. Ct. 2893, 2897 (1989).)

### *Damages According to 18 U.S.C. §1962*

66.     Section 1964(c) requires a RICO plaintiff to list the alleged victims and state how each victim was injured by making two threshold showings which are 1) that the Plaintiff suffered an injury to business or property and 2) that the Plaintiff's injury was proximately caused by the defendant's violation of 18 U.S.C. §1962. The statute requires that the criminal activities are "chargeable" or "indictable" under state or federal law, not that the defendant has already been charged or indicted. (18 U.S.C. §1961(1).)

67.     Plaintiffs Alfredo Rosenberg and Ruth Rosenberg are injured jointly by the actions of Defendants MERS and BOA because they have been blocked from making payments on the

Promissory NOTE in favor of Plaintiff Ruth E. Rosenberg to the actual beneficiary and forced into foreclosure as part of Defendants' fraudulent scheme to eliminate any history of Plaintiff's loan from the MERS database.  (Plaintiff Alfredo Rosenberg was damaged herein as the funds used for the payment of the NOTE were derived from the joint community property of Ruth A. Rosenberg and Alfredo Rosenberg.)  Plaintiffs' damages are the sum of the mortgage payments to Defendant BOA which were made under the pretense that Defendant BOA was *servicing* Plaintiff's loan for the benefit of a beneficiary at the same time as Defendant BOA was fraudulently claiming ownership by recording an ASSIGNMENT with the Los Angeles County Recorder that claimed *they* were the beneficiary.  Plaintiff's demand disgorgement of all the mortgage payments to Defendant BOA and the right to negotiate their debt with the Creditors of the HOMECOMING/ RESCAP Chapter 11 Bankruptcy.

### THIRD CAUSE OF ACTION
*Defendants BOA, CHRISTIANA TRUST & SELENE*
**Violation of 15 U.S.C. §1692a(6) for**
**attempting to collect a debt that is owed to another**

68.     Plaintiffs hereby allege and incorporate herein by reference each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

69.     For nine (9) months beginning or about October 1, 2009 until on or about June 1, 2009 Defendant BOA solicited and accepted payments from Plaintiff in the amount of three thousand fifty-five dollars and fifteen cents ($3,055.15) per month for a total of twenty-seven thousand four hundred ninety-six dollars and thirty-five cents ($27,496.35) as servicer which was a violation of 15 U.S.C. §1692a(6) since Defendant was converting these payments completely to their own use and not servicing on behalf of any beneficiary. (¶s 30-34.)

70.     On or about May 1, 2010 Defendant BOA sent "delinquency" NOTICES to Plaintiffs which were in a violation of 15 U.S.C. §1692a(6) since Defendants were not entitled to collect on their own behalf and unfair since Plaintiffs were not delinquent.

71.     For eight (8) months beginning on or about July 1, 2010 until on or about February 1, 2011 Defendant BOA solicited and accepted payments from Plaintiff in the amount of three thousand three-hundred and eighty-eight dollars ($3,388.00) per month for a total of twenty-seven thousand one-hundred four dollars ($27,104.00) as servicer which was a violation of 15 U.S.C. §1692a(6) since Defendant was converting these payments to their own use and not servicing on behalf of any beneficiary. (¶s 35-39.)

72.     For eight (8) months beginning on or about March 1, 2011, until on or about October 1, 2011 Defendant BOA solicited and accepted payments from Plaintiff in the amount of three thousand eight-hundred eighty-eight dollars ($3,888.00) for a total of thirty-one thousand one hundred and four dollars ($34,104.00) as a servicer which was a violation of 15 U.S.C. §1692a(6) since Defendant was converting these payments to their own use and not servicing on behalf of any beneficiary. (¶s 40-49.)

73.     On October 17, 2011 Defendant BOA recorded a NOTICE OF DEFAULT stating arrears of thirty-nine thousand nine hundred forty-five-dollars and eighty cents ($39,945.80) which was also a violation of 15 U.S.C. §1692a(6) *as well as* unfair since Defendant was converting these payments to their own use and not servicing on behalf of any beneficiary *and* Plaintiffs had not missed a single payment on their modification despite the higher amount demanded by Defendant. (¶48-49.)

74.     For six (6) months beginning on or about December 13, 2013 until June 1, 2014 Defendant BOA sent mortgage bills to Plaintiffs for payments in the amount of three thousand

six hundred twenty-seven dollars and forty-five cents ($3,627.45) for a total of twenty-one-thousand seven hundred sixty four dollars and seventy cents ($21,764.70) which was also a violation of 15 U.S.C. §1692a(6) since Defendant BOA was converting these payments to their own use and not servicing on behalf of any beneficiary and not entitled to collect on this debt. (¶55.)

76.     Plaintiffs received a telephone call on August 13, 2015 from Defendant SELENE's agent QUINTERO demanding a mortgage payment.  As previously detailed in this Complaint Defendant SELENE is a servicer for Defendant the CHRISTIANA TRUST that is without authority to collect this debt.

77.     On or about August 21, 2015 Plaintiffs received a statement from Defendant Selene demanding arrears of three-hundred forty-five-thousand four-hundred-sixty one dollars and fifty cents ($345,461.50) and a mortgage payment of seven thousand and one dollar and fifty cents ($7,001.77). (¶60.) This is a payment claimed under the Deed of Trust in favor of HOMECOMING which is owed to the securitized trust that received Plaintiff's debt and not to Defendants SELENE and the CHRISTIANA Trust making this a further violation of 15 U.S.C. §1692a(6).

### *Declaratory Relief*

78.     Section 1060 of the California Code of Civil Procedure Section 1060, provides that "Any person interested under a written contract... who desires a declaration of his rights or duties with respect to another, or in respect to... property... may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action... in the Superior Court for a declaration of his or her rights and duties in the premises...." The judgment must decree, not suggest, what the parties may or may not do...." *Selby Realty Co. v.*

*City of San Buenaventura* 10 Cal.3d 110 (1973).  To plead a valid declaratory relief action, a complaint must plead the existence of an "actual concrete controversy." *Wilson v. Transit Authority*, 199 Cal.App.2d 716, 722 (1962).

79.     Plaintiffs seek a judicial declaration that their debt is owed to the securitized trust into which their loan was sold and the opportunity to negotiate their debt with the Chapter 11 Trustee in the RESCAP bankruptcy.  Plaintiffs further seek disgorgement of all funds paid to Defendant BOA.

80.     If Defendants SELENE, BOA, and the CHRISTIANA Trust cannot evidence a transfer of beneficiary rights sufficient to enforce the Power of Sale Clause in the DEED OF TRUST, Plaintiffs seek a declaratory judgment that Defendants are debt collectors wrongfully collecting a debt that is due to another.

### FOURTH CAUSE OF ACTION
*Violation of California B&P Code § 17260, et seq.*
**(All Defendants and DOES 1-50)**

81.     Plaintiffs hereby allege and incorporate herein by reference each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

82.     Plaintiffs are informed, believe and thereupon allege that Defendants, and each of them, are doing business in the State of California, servicing mortgages on a mass scale for profit, and therefore are precisely the type of businesses B&P Code §17200 governs.

83.     Under the unlawful prong, "the UCL borrows violations of the other laws . . . and makes those unlawful practices actionable under the UCL." *Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1505 (1999).  Defendants BOA, MERS, and TRUSTEE CORPS are in violation of California Penal Code § 532f (a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office that is

"known to be false, with the intent to defraud." Plaintiffs have also raised triable issues as to Bank Fraud under 18 U.S.C. §1341 and Mail Fraud under 18 U.S.C. §1344 and allege that Defendants are clearly liable under B&P Code §17200, et seq. for the "unlawful" acts described herein.

84.    On April 15, 2011, Defendants BOA and MERS recorded an ASSIGNMENT OF THE DEED OF TRUST to Defendant BOA from HOMECOMING on no authority from a beneficiary, with no consideration given, and then conspired to wipe all evidence of the securitization from the MERS system. (¶41.) This recorded ASSIGNMENT was a predicate act of bank fraud pursuant to 18 U.S. Code §1344, because it was intended to deprive the beneficiary of Plaintiff's loan which was the securitized trust that purchased Plaintiff's loan from RESCAP and it was a predicate act of Mail Fraud in violation of 18 U.S.C. §1341 since it was recorded with the Lo Angeles County Recorder and sent by mail. (¶41.)

85.    On October 17, 2011, Defendant BOA recorded a SUBSTITUTION OF TRUSTEE from ALLIANCE TITLE COMPANY (ALLIANCE) to RECONTRUST COMPANY N.A. (RECONTRUST), which is a trustee company that is owned by Defendant BOA and a NOTICE OF DEFAULT, which began the foreclosure process so as to defraud the beneficiary of Plaintiff's loan by conducting a foreclosure sale to benefit Defendant BOA. (See Exhibits "H" and "I" and ¶¶s 43-44 herein.)

86.    On October 17, 2011, the recorded SUBSTITUTION OF TRUSTEE (¶s45-47) and the recorded NOTICE OF DEFAULT (¶s48-49) are both mortgage fraud in violation of California Penal Code §532f(a)(4) for being false documents known to be false that are recorded since Defendant BOA was not a beneficiary with standing to SUBSTITUTE a trustee and record a subsequent NOTICE OF DEFAULT. (See Exhibits "H" and "I" and ¶s 45-49 herein.) The

SUBSTITUTION is also a violation of California Civil Code §2934a (a)(1), which states that only the beneficiary or the agent of the beneficiary can record a SUBSTITUTION OF TRUSTEE. (See Exhibit "H" and ¶ 43 herein.)

87.     On October 17, 2011,, the SUBSTITUTION OF TRUSTEE from ALLIANCE to RECONTRUST was also a predicate act of bank fraud pursuant to 18 U.S. Code §1344 because it was intended to deprive the beneficiary of Plaintiff's loan, which was the securitized trust that purchased Plaintiff's loan from RESCAP. . (See Exhibit "H" and ¶ 43 herein.) This was also a predicate act of Mail Fraud in violation of 18 U.S.C. §1341, since this SUBSTITUTION was recorded with the Los Angeles County Recorder and sent by mail. (See Exhibit "H" and ¶ 43 herein.)

88.     On October 17, 2011, the NOTICE OF DEFAULT that Defendant BOA recorded was also a predicate act of bank fraud pursuant to 18 U.S. Code §1344, because it was intended to foreclose on Plaintiffs for the benefit of Defendant BOA and deprive the beneficiary of Plaintiff's loan, which was the securitized trust that purchased Plaintiff's loan from RESCAP. (See Exhibit "I" and ¶ 44 herein.) This was also a predicate act of Mail Fraud in violation of 18 U.S.C. §1341 since this SUBSTITUTION was recorded with the County Recorder and sent by mail. (See Exhibit "I" and ¶ 44 herein.) Plaintiffs were also not actually in default at the time this NOTICE OF DEFAULT was recorded adding to the falsity. (See Exhibit "I" and ¶44 herein.)

89.     On June 14, 2015, Defendants committed their last *ongoing* act of fraud by recording a NOTICE OF TRUSTEE'S SALE with the Los Angeles County recorder that named MERS as "nominee" for HOMECOMING while attempting to foreclose on behalf of Defendant BOA. This was mortgage fraud in violation of California Penal Code §532f(a)(4) since MERS was

not acting as a nominee for HOMECOMING, but was acting in conspiracy with Defendant BOA.

90.    Plaintiffs are informed, believe and thereupon alleges, that Defendants, and each of them, violated B&P Code §§ 17200 and 17500 in that their acts were fraudulent, unlawful and unfair, and were intended to be deceptive, as alleged herein.

91.    Plaintiffs have suffered damages in the amount of eighty-nine thousand five hundred twenty-eight dollars and thirty-five cents ($89,528.35), which is the result of nine (9) months of mortgage payments of three thousand fifty five dollars and fifteen cents ($3055.15), eight (8) months of mortgage payments of three thousand three-hundred and eighty-eight dollars ($3,388.00) and eight (8) months of mortgage payments of three thousand eight hundred eighty-eight dollars ($3,888.00) paid to Defendant BOA. (¶¶s 32, 35, & 39 herein.).

## **PRAYER FOR RELIEF**

1. For an ORDER cancelling and expunging all documents recorded with the Los Angeles County Recorder by Defendants Bank of America, N.A., Mortgage Electronic Registration Systems Inc., and MTC Financial Inc. d/b/a Trustee Corps.

2. For disgorgement of all funds paid to Bank of America, N.A.

3. For a declaration of the rights and duties of the parties, specifically that Defendant Bank of America, N.A. is not an ASSIGNEE of the DEED OF TRUST, with standing to foreclose, that Defendant Mortgage Electronic Registration Systems Inc.is not a nominee of Homecomings Financial Network, Inc., and that Selene Finance LLP is not the servicer for Plaintiff's loan on behalf of Homecomings Financial Network, Inc.

4. For a declaration of the rights and duties of the Trustee of HOMECOMING and RESCAP's Chapter 11 bankruptcy.

5. Damages and costs pursuant to FDCPA California Civil Code § 1788.16.

6. For recovery of interest, costs and attorneys' fees and expenses, to the extent recoverable under applicable law and the evidence submitted to the Court;

///

///

7. For treble damages and attorneys' fees pursuant to 18 U.S. Code §1964 for violation of 18 U.S.C. 1962(c) & 1962(d).

8. For such other and further relief as the Court deems just and proper.


Dated:  August 21, 2015                          ADVOCATE LEGAL


                                                 SUSAN M. MURPHY
                                                 Attorney for Plaintiffs
                                                 RUTH E. ROSENBERG
                                                 ALFREDO ROSENBERG

## VERIFICATION OF COMPLAINT

State of _California_

County of _Los Angeles_, to wit:

_Ruth A. Rosenberg and
Alfredo Rosenberg_ ,the Complainant named in the foregoing Complaint being duly sworn, says that the facts and allegations contained therein are true, except so far as they are therein stated to be on information, and that, so far as they are therein stated to be on information, she/he believes them to be true.

_[signatures]_

_____
Complainant (signature)

_Alfredo Rosenberg and Ruth A. Rosenberg_

# EXHIBIT "A"

Branch :NT4,User :TT07                    Comment:                              Station Id :FB39

RECORDING REQUESTED BY:              95 2006785
A TIC

When Recorded Mail Document
and Tax Statement To:              RECORDED/FILED IN OFFICIAL RECORDS
                                   RECORDER'S OFFICE
Alfredo E. Rosenberg and           LOS ANGELES COUNTY
Ruth A. Rosenberg                  CALIFORNIA
5351 Bindewald Road
Torrance, CA 90505                 DEC 18 1995      AT 8 A.M.

Escrow No.   9751-S
Title Order No.  9514250-4         SPACE ABOVE THIS LINE FOR RECORDER'S USE
APN:  7530-5-14
                          GRANT DEED

The undersigned grantor(s) declare(s)                    FEE $10    P
Documentary transfer tax is $ __495.00__   City tax $ __-0-__                2
  | xx | computed on full value of property conveyed, or
  |    | computed on full value less value of liens or encumbrances remaining at time of sale.
  |    | Unincorporated Area   City of _____

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

      Peter Michael Gaglio, a married man as his sole and separate property,

hereby GRANT(S) to
    Alfredo E. Rosenberg and Ruth A. Rosenberg, husband and wife as joint tenants

the following described real property in the City of   Torrance
County of   Los Angeles                                         State of California:
    Lot 3, in Block 7 of Tract No. 15597, as per map recorded in Book 332, Pages 16 to 19
    inclusive of Maps, in the office of the County Recorder of said County.

    AS MORE PARTICULARLY DESCRIBED IN ATTACHED EXHIBIT "A"


DATED:  ___December 5, 1995___                 _Peter Michael Gaglio_

STATE OF CALIFORNIA                            Peter Michael Gaglio
COUNTY OF   Los Angeles
ON   December 5, 1995          before me,
   Shirley Castellow      personally appeared
   Peter Michael Gaglio - -

personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within          [Notary Seal]
instrument and acknowledged to me that he/she/they      SHIRLEY CASTELLOW
executed the same in his/her/their authorized           COMM #995594
capacity(ies), and that by his/her/their signature(s) on   Notary Public-California
the instrument the person(s), or the entity upon        LOS ANGELES COUNTY
behalf of which the person(s) acted, executed the       My comm. expires MAR 08,1996
instrument.

Witness my hand and official seal.

Signature  _Shirley Castellow_

          MAIL TAX STATEMENT AS DIRECTED ABOVE

FD-13 (Rev 4/94)                     GRANT DEED

Branch :NT4,User :TT07          Comment:                    Station Id :FB39

Order No. 9514020-4

## EXHIBIT "A"

Lot 3, in Block 7 of Tract No. 15397, in the City of Torrance, County of Los Angeles, State of California, as per map recorded in Book 332, Pages 16 to 19 inclusive of Maps, in the office of the County Recorder of said County.

EXCEPT all minerals in and under said land below a plane of 100 feet below the surface, together with the right to grant said minerals to others, but said reservation not to include any right to go upon the surface of said land for any purpose in connection with said minerals, as reserved by Roy P. Dolley and Darris M. Dolley, his wife, in deed recorded in Book 27882, Page 244, Official Records.

95 2006785

# EXHIBIT "B"

Branch :NT4,User :TT07                    Comment:                            Station Id :FB39

**RECORDING REQUESTED BY:**           06/30/06
**ALLIANCE TITLE COMPANY**

RECORDING REQUESTED BY:
ALLIANCE TITLE COMPANY-O.C.                    **06 1452150**

AND WHEN RECORDED MAIL TO:

RUTH A. ROSENBERG
5351 BINDEWAL ROAD
TORRANCE, CA. 90505

*15190233*

| | THIS SPACE FOR RECORDER'S USE ONLY: |
|---|---|
| Title Order No.: 15190233 | Escrow No.: 42895 |

### INTERSPOUSAL TRANSFER GRANT DEED
(Excluded from reappraisal under California Constitution Article 13 A Section 1 et seq.)

DOCUMENTARY TRANSFER TAX is $NONE

[X]   computed on full value of property conveyed, or
[ ]   computed on full value less value of liens or encumbrances remaining at time of sale.
[X ]  is exempt from imposition of the Documentary Transfer Tax pursuant to Revenue and Taxation Code Section
      11927(a), on transferring community, quasi- community, or quasi-marital property, assets between spouses pursuant
      to a judgment, and order, or a written agreement between spouses in contemplation of any such judgment or order.
[X]   A creation, transfer, or termination, solely between spouses, of any co-owner's interest.

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**ALFREDO ROSENBERG,** spouse of grantee

hereby GRANT(s) to: **RUTH A. ROSENBERG, a married woman as her sole and separate property**

the real property in the City of TORRANCE, County of LOS ANGELES, State of California, described as:
Lot 3 of Block 7 of Tract No. 15397, in the City of TORRANCE, County of LOS ANGELES, State of California, as per
Map recorded in Book 332, Pages 16 to 19 inclusive of Maps, In the Office of the County Recorder of said County.

Also Known as: 5351 BINDEWALD ROAD, TORRANCE, CA 90505

## EXHIBIT "A"

DATED June 23, 2006
STATE OF CALIFORNIA
COUNTY OF LOS ANGELES
On 6-23-06
Before me, Cheryl Ann Giuliano                      ALFREDO ROSENBERG
A Notary Public in and for said State, personally appeared
ALFREDO ROSENBERG

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

CHERYL ANN GIULIANO
Commission # 1487783
Notary Public - California
Orange County
My Comm. Expires May 4, 2008

Signature _____                    (This area for official notarial seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW: IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

Branch :NT4,User :TT07          Comment:                    Station Id :FB39

06/30/06

# EXHIBIT "A"

LOT 3, IN BLOCK 7 OF TRACT 15397, IN THE CITY OF TORRANCE, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
332 PAGES 16 TO 19 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER
HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND,
BUT WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED OR
GRANTED IN DOCUMENTS OF RECORD.

**06 1452150**

# EXHIBIT "C"

Case 2:15-cv-07518-PSG-AGR   Document 1   Filed 09/25/15   Page 48 of 120   Page ID #:48

06/30/06

**RECORDING REQUESTED BY:**
**ALLIANCE TITLE COMPANY**

**06  1452151**

RECORDING REQUESTED BY
Alliance Title Company
AND WHEN RECORDED MAIL TO

Name    HOMECOMINGS FINANCIAL NETWORK,
        INC.
Street   ONE MERIDIAN CROSSING, # 100
Address

City,State  MINNEAPOLIS, MN 55423
Zip

Order No. 15190233148

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**DEED OF TRUST**

SEPARATE PAGE PURSUANT TO GOVT CODE 27361.6

Recover (rev. 09/05/01)

Branch :NT4,User :TT07                    Comment:                              Station Id :FB39

**RECORDING REQUESTED BY:**     06/30/06
**ALLIANCE TITLE COMPANY**

Recording Requested By: HOMECOMINGS FINANCIAL NETWORK, INC.

Return To:   HOMECOMINGS FINANCIAL NETWORK, INC.
             One Meridian Crossing, Ste. 100
             Minneapolis   MN   55423
             Loan Number: 042-949028-7

Prepared By:   HOMECOMINGS FINANCIAL NETWORK, INC.
               4350 Von Karman Avenue, Suite 100
               Newport Beach, CA 92660

*15170233* ————[Space Above This Line For Recording Data]————————

# DEED OF TRUST

MIN 100062604294902871

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JUNE 23RD, 2006
together with all Riders to this document.
(B) "Borrower" is

RUTH A. ROSENBERG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower's address is   5351 BINDEWALD ROAD, TORRANCE, CA 90505
                        . Borrower is the trustor under this Security Instrument.
(C) "Lender" is   HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a   CORPORATION
organized and existing under the laws of   DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3005  1/01
MFCA7770 (08/2004) / 042-949028-7
-6A(CA) (0207)
Page 1 of 15          Initials: _R.R._
VMP MORTGAGE FORMS - (800)521-7291



## 06 1452151

LOS ANGELES,CA                      Page 2 of 23              Printed on 7/7/2015 11:39:12 AM
Document: TD 2006.1452151

Branch :NT4,User :TT07                    Comment:                               Station Id :FB39

06/30/06

Lender's address is  4350 VON KARMAN AVENUE, #100
NEWPORT BEACH, CA 92660
(D) "Trustee" is  ALLIANCE TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  JUNE 23RD,  2006
The Note states that Borrower owes Lender  ONE MILLION AND NO/100
                                                                                                                                      Dollars
(U.S. $1,000,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than        JULY 1ST,  2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [x] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

MFCA7770 (08/2004)  /  042-949028-7                                              Initials: P P
(Logo) -6A(CA) (0207)                     Page 2 of 15                            Form 3005  1/01

06 1452151

Branch :NT4,User :TT07                    Comment:                                Station Id :FB39

06/30/06

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                of LOS ANGELES                    :
          [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
Legal description attached hereto and made a part hereof

Parcel ID Number:  7530-005-014                        which currently has the address of
5351 BINDEWALD ROAD                                                                [Street]
TORRANCE                                        [City], California      90505  [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

MFCA7770 (08/2004) / 042-949028-7
-6A(CA) (0207)                    Page 3 of 15          Initials: R. R          Form 3005  1/01

06  1452151

06/30/06

# LEGAL DESCRIPTION

LOT 3, IN BLOCK 7 OF TRACT 15397, IN THE CITY OF TORRANCE, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
332 PAGES 16 TO 19 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER
HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND,
BUT WITHOUT THE RIGHT OF SURFACE ENTRY, AS RESERVED OR
GRANTED IN DOCUMENTS OF RECORD.

**06  1452151**

Branch :NT4,User :TT07          Comment:                    Station Id :FB39

06/30/06

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

MFCA7770 (08/2004) / 042-949028-7
⊕ -6A(CA) (0207)          Page 4 of 15          Initials: _D.E._          Form 3005  1/01

**06 1452151**

Branch :NT4,User :TT07　　　　　　　　Comment:　　　　　　　　　　Station Id :FB39

06/30/06

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

MFCA7770 (08/2004) / 042-949028-7
-6A(CA) (0207)　　　　　　　　Page 5 of 15　　　Initials: _e. R_　　　　Form 3005　1/01

**06　1452151**

06/30/06

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

MFCA7770 (08/2004) / 042-949028-7
-6A(CA) (0207)          Page 6 of 15          Initials: _R.R._          Form 3005  1/01

**06 1452151**

Branch :NT4,User :TT07          Comment:                    Station Id :FB39

06/30/06

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

MFCA7770 (08/2004) / 042-949028-7
-6A(CA) (0207)          Page 7 of 15          Initials: *R.R*          Form 3005  1/01

## 06 1452151

Branch :NT4,User :TT07                    Comment:                              Station Id :FB39

06/30/06

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

MFCA7770 (08/2004) / 042-949028-7          Initials: R.R.
-6A(CA) (0207)          Page 8 of 15          Form 3005  1/01

**06 1452151**

LOS ANGELES,CA
Document: TD 2006.1452151          Page 10 of 23          Printed on 7/7/2015 11:39:15 AM

Branch :NT4,User :TT07                Comment:                Station Id :FB39

06/30/06

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

MFCA7770 (08/2004) / 042-949028-7
-6A(CA) (0207)                Page 9 of 15                Initials: _e_e_                Form 3005   1/01

06 1452151

Branch :NT4,User :TT07                    Comment:                              Station Id :FB39

06/30/06

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

MFCA7770 (08/2004) / 042-949028-7
-6A(CA) (0005)                    Page 10 of 15          Initials: _e.e_          Form 3005  1/01

06 1452151

Branch :NT4,User :TT07                    Comment:                              Station Id :FB39

06/30/06

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

MFCA7770 (08/2004)  /  042-949028-7
⬥ -6A(CA) (0207)                              Page 11 of 15                   Initials: R.R.                   Form 3005   1/01

## 06  1452151

Branch :NT4,User :TT07            Comment:                        Station Id :FB39

06/30/06

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MFCA7770 (08/2004) / 042-949028-7
-6A(CA) (0207)            Page 12 of 15        Initials: e.R.        Form 3005  1/01

06  1452151

Branch :NT4,User :TT07          Comment:                    Station Id :FB39

06/30/06

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

MFCA7770 (08/2004) / 042-949028-7          Initials: R.D.

-6A(CA) (0207)                    Page 13 of 15               Form 3005  1/01

06 1452151

Branch :NT4,User :TT07      Comment:      Station Id :FB39

06/30/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                 RUTH A. ROSENBERG       -Borrower

_____     _____ (Seal)
                                                     -Borrower

_____ (Seal)   _____ (Seal)
                  -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                  -Borrower                                  -Borrower

_____ (Seal)   _____ (Seal)
                  -Borrower                                  -Borrower

MFCA7770 (08/2004) / 042-949028-7
    -6A(CA) (0207)                      Page 14 of 15                      Form 3005 1/01

06 1452151

Branch :NT4,User :TT07          Comment:                          Station Id :FB39

06/30/06

State of California
County of _____

On 6·23·06                  before me _____, Notary Public
                                                          personally appeared

_____

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

CHERYL ANN GIULIANO
Commission # 1487783
Notary Public - California
Orange County
My Comm. Expires May 4, 2008

MFCA7770 (08/2004) / 042-949028-7
     -6A(CA) (0207)          Page 15 of 15        Initials: e.e        Form 3005  1/01

06 1452151

Branch :NT4,User :TT07          Comment:                    Station Id :FB39

06/30/06

# ADJUSTABLE RATE BALLOON RIDER

THIS ADJUSTABLE RATE RIDER is made this ˙23RD  day of   JUNE, 2006          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
HOMECOMINGS FINANCIAL NETWORK, INC.

("Lender") of the same date and covering the property described in the Security Instrument
and located at:
         5351 BINDEWALD ROAD
         TORRANCE, CA 90505

[Property Address]

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE
ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN
DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT
THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT
OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO
FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH,
WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT
MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING
COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN
REFINANCING FROM THE SAME LENDER.

THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST
RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE
AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE.
THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE
AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT
STATED IN THE NOTE.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

Lender or anyone who takes the Note by transfer and who is entitled to receive payments
under the Note is called the "Note Holder."

PAYMENT OPTION MULTISTATE ADJUSTABLE RATE BALLOON
7754103 (0402)      MFC06268 - (09/2005) / 042-949028-7
Page 1 of 6      Initials: RR .
VMP Mortgage Solutions, Inc.
(800) 521-7291

**06 1452151**

Branch :NT4,User :TT07          Comment:          Station Id :FB39

06/30/06

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for changes in the interest rate and the monthly payments, as follows:

### 2. INTEREST

(A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will initially pay interest at a yearly rate of        1.7500        %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

(B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of  AUGUST,  2006                    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. Although the interest rate may change monthly, my monthly payment will be recalculated in accordance with Section 3.

(C) Interest Rate Limit

My interest rate will never be greater than        9.9500        %.

(D) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (h.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding  THREE AND TWO HUNDRED AND SEVENTY FIVE THOUSANDTHS percentage point(s) (   3.2750                    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 2(C) above, the result of this addition will be my new interest rate until the next Interest Rate Change Date.

### 3. PAYMENTS

(A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on  AUGUST 1ST,  2006                . I will make these payments every month until I have paid all the

7754103 (0402)                                Page 2 of 6                         Initials: _e.12_
MFCD6266 (09/2005) / 042-949028-7

**06  1452151**

Branch :NT4,User :TT07                          Comment:                                      Station Id :FB39

06/30/06

Principal and interest and any other charges that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    JULY 1ST, 2036         , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  4350 VON KARMAN AVENUE, #100, NEWPORT BEACH, CA 92660
or at a different place if required by the Note Holder.

(B) Minimum Payment; Amount of My Initial Monthly Payments

My "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with this Section 3(B), or Section 3(D), 3(F) or 3(G), below, as applicable.

Each of my initial Minimum Payments will be in the amount of U.S. $ 2,898.34 until a new Minimum Payment is required as provided below.

(C) Payment Change Dates

My Minimum Payment may change as required by Section 3(D) below beginning on the first day of  AUGUST, 2007       , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My Minimum Payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay at least the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

(D) Calculation of Monthly Payment Changes

Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on  AUGUST 1, 2046       (which is called the "Amortization Date") in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Paying only this amount would result in a balloon payment. Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment that will be effective on a Payment Change Date will be in the amount of the Full Payment, except that my new Minimum Payment will be limited to an amount that will not be more than 7.5% greater or lesser than the amount of my last Minimum Payment due before the Payment Change Date (this limitation is called the "Payment Change Cap"). The Payment Change Cap applies only to the Principal and interest payment and does not apply to any escrow payments the Note Holder may require under the Security Instrument.

(E) Additions to My Unpaid Principal

My monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Amortization Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. The Note Holder also will add interest on the amount of this difference to my unpaid Principal each month. The interest rate on the interest added to Principal will be the rate required by Section 2 above. For each month that my

7754103 (0402)                            Page 3 of 6                            Initials: R R
MFCD6288 (09/2005) / 042.949028-7

06 1452151

Branch :NT4,User :TT07                    Comment:                    Station Id :FB39

06/30/06

monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal may never exceed a maximum amount equal to 115% of the Principal amount I originally borrowed. Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid Principal under Section 3(E) above could cause my unpaid Principal to exceed that maximum amount when interest rates increase. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment in an amount that would be sufficient to repay my then unpaid Principal in full on the Amortization Date in substantially equal installments at the interest rate effective during the preceding month, regardless of the Payment Change Cap. This amount will be my new Minimum Payment. This means that my Minimum Payment may change more frequently than annually. This new Minimum Payment amount will remain in effect until at least the next regular Payment Change Date, unless another recalculation of my Minimum Payment is required by this Section prior to such Payment Change Date.

**(G) Required Full Payment**

Regardless of the Payment Change Cap, on the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying at least the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, each month the Note Holder may provide me with up to three additional payment options (in addition to the Minimum Payment) that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i)   **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option.

(ii)  **Partially Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) at the Amortization Date in substantially equal installments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change every month.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (including all Principal and interest) within a fifteen (15) year period from the first payment due date in substantially equal installments. This Payment Option is calculated on the assumption that the current rate will remain in effect until the loan is paid in full, however, the current interest rate may in fact change every month.

Payment Options will only be available if they are greater than the Minimum Payment.

**(I) Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described herein, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me

7754103 (0402)                    Page 4 of 6                    Initials: _P. P._
MFCD6266 (05/2005) / 042-949028-7

**06 1452151**

Branch :NT4,User :TT07                    Comment:                              Station Id :FB39

06/30/06

that may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies that I may have paid to partial Prepayment of unpaid Principal.

**4. NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**7754103 (0402)**
MFCD8288 (09/2005) / 042-949028-7

Page 5 of 6                                    Initials: _P.P_

**06 1452151**

Branch :NT4,User :TT07                    Comment:                              Station Id :FB39

06/30/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
RUTH A. ROSENBERG              -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                                            -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                                            -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                                            -Borrower                                         -Borrower

7754103 (0402)                              Page 6 of 6
MFCD6208 - (05/2005) / 042-949028-7

06 1452151

LOS ANGELES,CA                       Page 23 of 23                    Printed on 7/7/2015 11:39:18 AM
Document: TD 2006.1452151

# EXHIBIT "D"

 **Countrywide Bank**

SERVICED BY COUNTRYWIDE

**Account number 143612726**   Statement date   1 of 4
09/29/2008
Property address
5351 Bindewald Road

## MONTHLY HOME LOAN STATEMENT

0070137 01 AT 0.346 **AUTO 760 2250 90565-4316
PO A3 AG 0101----0--2-2- C0G00060 1N 4 P70207
RUTH A ROSENBERG
5351 Bindewald Rd
Torrance CA 90505-4316

Ilidalliandididandialadiandilliandilandilaill

**❗ Pay Option Notice:**
Because your loan is not current, we
are unable to calculate your Pay Options.
A coupon for the minimum payment amount
is provided on the enclosed page.

### Your Monthly Home Loan Statement
Snapshot of your Home Loan as of September 29, 2008

| | |
|---|---|
| Type of Loan | Conv Jumbo PayOption ARM |
| Current Principal Balance | $1,074,469.19 |
| Original Loan Amount | $1,000,000.00 |
| Maximum Limit (see explanation at bottom of page) | 115.00% |
| Margin | 3.275% |
| Interest Rate this Month | 6.125% |
| Remaining Term | 38 Years, 4 Months |

**Payment Due Date:** Oct 1, 2008
**Late Payment Charge:** $155.79 if payment is not received by Oct 16, 2008

### Additional Account Information

| | |
|---|---|
| Past Due Amount | $19,161.60 |
| Fees Due | $41.25 |

Countrywide is required by law to inform you that this
communication is from a debt collector.

### Your Payment Options this Month
The amounts listed below are total payments, including amounts collected for escrow items such as taxes and insurance premiums.

| Payment Options | Total Payment | Deferred Interest | Principal/ Interest Owed | Outstanding Late Charges** | Escrow | Optional Products*** | TARP |
|---|---|---|---|---|---|---|---|
| Option 1 Amortized Payment · This option is not available this month. | | | | | | | |
| Option 2 15-Year Amortized Payment · This option is not available this month. | | | | | | | |
| Option 3 Minimum Payment | $3,420.87 | | $3,349.38 | $71.49 | | | |
| Option 4 Interest Only Payment · This option is not available this month. | | | | | | | |

Please note: Amounts above are estimates and may change based on payments made
*Negative amounts (t-) minus sign) shown in the deferred interest column are added to the principal balance. This results from making a Minimum Payment that is less than the interest due.
**Outstanding late charges up to $400.00 are reflected in the payment option amount.

Countrywide Home Loans (Countrywide) services your home loan on behalf of the holder of your note (Noteholder). This is
to advise you that your account remains seriously delinquent.

If we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the
Noteholder in your property. This action may include returning payments that are less than the total amount due.

**Please give this matter your most urgent attention.** Please pay the total amount due immediately. Countrywide will proceed
with collection action until your account is brought fully current, and you will be responsible for all cost incurred in this process
to the full extent permitted by law.

If you are unable to bring your account current, please contact us at **1-800-669-6654.**

Sincerely,

MICHELE LANGLEY
Loan Counselor

**Maximum Limit** Per your loan documents, the Maximum Limit is the maximum amount your loan can grow to before you are required to make the Full Payment. If you reach the Maximum Limit, your Minimum Payment will
increase to the amount sufficient to repay your unpaid principal balance in full on the Maturity Date in substantially equal payments at the then current interest rate.

# EXHIBIT "E"

: of 4



**Bank of Ameri**

**Home Loans**

Customer Service
P. Box 5170
Simi Valley, CA 93062-5170

Statement date 08/28/2009
**Account Number 143612726**
Property address
5351 Bindewald Road

0 1 4 6 7 7 3  31 AT 0 557  **AUTO  T5 0 7088 90505-4316
PG 44 AG 0101-  -0- 2-2- C0000030 IN 1 P46920
RUTH A ROSENBERG
5351 Bindewald Rd
Torrance CA 90505-4316

**Pay Option Notice:**
Because your loan is not current, we
are unable to calculate your Pay Options.
A coupon for the minimum payment amount
is provided on the enclosed page.

|ııl·ıllı·ıll·l·lıı·ıll·ıllı·ıllıl·lıll·ıllll·ıll·ılıl·lıı

## Your Monthly Home Loan Statement
### Snapshot of your Home Loan as of August 28, 2009

| | |
|---|---|
| Type of Loan | Conv Jumbo PayOption ARM |
| Current Principal Balance | $1,074,469.19 |
| Original Loan Amount | $1,000,000.00 |
| Maximum Limit (see explanation at bottom of page) | 115.00% |
| Margin | 3.275% |
| Interest Rate this Month | 4.375% |
| Remaining Term | 38 Years, 4 Months |

**Payment Due Date: Sep 1, 2009**
**Late Payment Charge:** $155.79 if payment is not received by **Sep 16, 2009**

**Additional Account Information**

| | |
|---|---|
| Past Due Amount | $56,255.98 |
| Fees Due | $227.25 |

BAC Home Loans Servicing, LP is required by law to inform
you that this communication is from a debt collector.

## Your Payment Options this Month
The amounts listed below are total payments, including amounts collected for escrow items such as taxes and insurance premiums.

| Payment Options | Total Payment | Deferred Interest | Principal/ Interest Owed | Outstanding Late Charges** | Escrow | Optional Products*** |
|---|---|---|---|---|---|---|
| Option 3 Minimum Payment | $4,000.56 | | $3,600.56 | 1,029.59 | | |

Please note  Amounts above are estimates and may change based on payments made.
**Negative amounts (-) minus sign) shown in the deferred interest column are added to the principal balance. This results from making a Minimum Payment that is less than the interest due.
*** Outstanding late charges up to $400.00 are reflected in the payment option amount

BAC Home Loans Servicing, LP services your home loan on behalf of the holder of your note (Noteholder). This is
to advise you that your account remains seriously delinquent.

If we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the
Noteholder in your property. This action may include returning payments that are less than the total amount due.

**Please give this matter your most urgent attention.** Please pay the total amount due immediately. BAC Home Loans Servicing, LP will
proceed with collection action until your account is brought fully current, and you will be responsible for all cost incurred in this
process to the full extent permitted by law.

If you are unable to bring your account current, please contact us at **1.800.669.6654.**

Sincerely,

LOAN SERVICING
Loan Counselor

**Maximum Limit** - Per your loan documents  the Maximum Limit is the maximum amount your loan can grow to before you are required to make the Full Payment. If you reach the Maximum Limit, your Minimum Payment will increase to the amount sufficient to repay your unpaid principal balance in full on the Maturity Date in substantially equal payments at the then current interest rate.

# EXHIBIT "F"

 This page is part of your document - DO NOT DISCARD 



**20110550968**



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/15/11 AT 11:22AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



L E A D S H E E T



201104151030128

00004034189



003264432

SEQ:
01

Daily ERDS



THIS FORM IS NOT TO BE DUPLICATED                 E13




Recording Requested By:
Bank of America
Prepared By:  Youda Crain
450 E. Boundary St.
Chapin, SC 29036
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DocID#    15314361272615677

Property Address:
5351 BINDEWALD ROAD
Torrance, CA 90505

CAO-ADT 13696983          4/11/2011

MIN #: 100062604294902871                        MERS Phone #:  888-679-6377

*This space for Recorder's use*

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34TH
AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BAC HOME
LOANS SERVICING, LP, FKA COUNTRYWIDE HOME  LOANS SERVICING, LP whose address is BAC
CORP OWNED ASSET, SIMI VALLEY, CA 93065 all beneficial interest under that certain Deed of Trust described
below together with the note(s) and obligations therein described and the money due and to become due thereon with
interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | MERS, INC., AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC. |
| Original Borrower(s): | RUTH A. ROSENBERG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY |
| Original Trustee: | ALLIANCE TITLE COMPANY |
| Date of Deed of Trust: | 6/23/2006 |
| Original Loan Amount: | $1,000,000.00 |

Recorded in Los Angeles County, CA on: 6/30/2006, book N/A, page N/A and instrument number 06 1452151

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
04/12/2011

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC.

By: _____

Dominique Johnson, Assistant Secretary

*See Attached Acknowledgment 04/12/2011*

006933001     ROSENBERG  RA

610  143612726  D8  002  001

## ACKNOWLEDGMENT

State of California
County of _Ventura_ )

On _April 12, 2011_ before me, _Deborah L Beard, Notary Public_
(insert name and title of the officer)

personally appeared _Dominique Johnson_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Deborah L Beard_   (Seal)
_Deborah L. Beard_

DEBORAH L. BEARD
Commission # 1853913
Notary Public - California
Ventura County
My Comm. Expires Jun 26, 2013

Attached: Assignment of Deed of Trust
Borrower(s): Ruth A Rosenberg
NB

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JUL 3 1 2015

_Dean C. Logan_ REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

# EXHIBIT "G"



**Process Loans, Not Paperwork™**

www.mers-servicerid.org

**1 record matched your search:**

MIN: 1000626-0429490287-1   Note Date: 06/23/2006          MIN Status: Inactive

Servicer:  Bank of America, N.A.                           Phone: (800) 669-6607
                Simi Valley, CA

If you are a borrower on this loan, you can click here to enter additional information and
display the Investor name.

Return to Search

For more information about Mortgage Electronic Registration Systems, Inc. (MERS) please go to www.mersinc.org

Copyright© 2012 by MERSCORP Holdings, Inc.

# EXHIBIT "H"

**This page is part of your document - DO NOT DISCARD**



# 20111399206



Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/17/11 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



L E A D S H E E T



2011101701600023

00004811846

003564121

SEQ:
22

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T46

2

LANDSAFE TITLE

RECORDING REQUESTED BY
RECONTRUST COMPANY

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd , CA6-914-01-94
SIMI VALLEY, CA 93063



10/17/2011

*20111399206*

ATTN: WILLIAM ZUNIGA
TS No. 11-0118096

11-0098278

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, RUTH A. ROSENBERG, A MARRIED WOMAN AS HER SOLE AND
SEPARATE PROPERTY was the original Trustor, ALLIANCE TITLE COMPANY was the
original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the
original Beneficiary under that certain Deed of Trust dated 06/23/2006 recorded on 06/30/2006 as
Instrument No. 06 1452151 in Book Page of Official Records of Los Angeles County,
California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and
WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in
place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said
Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes  RECONTRUST COMPANY, N.A.,
WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY,  CA  93063, as
Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or
neuter, and the singular number includes the plural.

~~DATED:October 12, 2011~~

OCT 1 3 2011

BANK OF AMERICA, N.A., SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING, LP
FKA COUNTRYWIDE HOME LOANS SERVICING,
LP

State of:  California                                          )

County of:  Ventura                                          )

BY: _____     OCT 1 3 2011
Candice Reeves-Herzog , Assistant Secretary
ASSISTANT VICE PRESIDENT

On OCT 1 3 2011  before me,     JEANINE HOFFMAN     , notary public, personally appeared
Candice Reeves-Herzog who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature  _____  (Seal)
        JEANINE HOFFMAN

JEANINE HOFFMAN
Commission # 1840466
Notary Public - California
Los Angeles County
My Comm. Expires Apr 11, 2013

*Form sub (01/09)*

22I

RECORDING REQUESTED BY

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

AND WHEN RECORDED MAIL TO

STATE BOARD OF EQUALIZATION
PO BOX 942879
SACRAMENTO, CALIFORNIA 94279-0055

RECORDED/FILED IN OFFICAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

**20140124771**
02/05/2014 08:04:00
FREE

No Fee Required
(GOVT. CODE SEC. 27361.3)
**Tax Lien Recorded In Error**
**Liability Paid or Abated**
**Prior to Recordation**

D.S. Abel, Authorized Representative

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

19

## RELEASE OF LIEN IMPOSED UNDER CERTIFICATE NO. BE 1323195

Pursuant to Chapter 14 (Commencing with Section 7150) of Division 7 of Title 1 of the Government Code

**Account No.: SR EA 100798143**

THE STATE BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA, hereby releases all property from that lien imposed by the recordation and/or filing of that certain Notice of State Tax Lien for amounts due from

RUTH A ROSENBERG (XXX-XX-5913)AKAs: Ruth Rosemberg, Ruth Abaud Rosenberg

DOING BUSINESS AS PACIFIC HOME FURNITURE

for Sales and Use Tax Law, Part 1, 1.5 and where applicable, Part 1.6 and Article 9.5 Chapter 8 of Part 2 of Division 4 of Public Resource Code.

| | | |
|---|---|---|
| Address: 1002 S PACIFIC AVE , SAN PEDRO | CA 90731-4102 | |
| Official Records, County of LOS ANGELES 12400 IMPERIAL HWY | NORWALK CA 90654 | |
| File No. INSTRUMENT NUMBER 20140055707 | Amount $ 22862.86 | |
| Date Filed 01/17/14 | Dated 01/15/14 | |

### *RECORD WITH RECORDER OF COUNTY SHOWN ABOVE*

| | |
|---|---|
| Address: | |
| with the Secretary of State, Uniform Commercial Code Division, PO Box 942835, Sacramento, California 94235-0001, as shown below: | |
| File No. | Amount $ |
| Date Filed | Dated |

### *RECORD WITH THE SECRETARY OF STATE*



Dated February 3, 2014
At Sacramento, California

The State Board of Equalization of the State of California has caused this Notice to be issued in its name by its representative thereon duly authorized by resolution of said Board.

The agency has adopted the use of a facsimile signature as shown below:

By
D.S. Abel, Authorized Representative

BOE-470-FC (S1) REV. 3 (3-13)

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JUL 3 1 2015

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

# EXHIBIT "I"

This page is part of your document - **DO NOT DISCARD**



## 20111399207



**Pages:**
**0006**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/17/11 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 27.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 27.00 |



**L E A D S H E E T**



201110170160023

**00004811847**



003564121

**SEQ:**
**23**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**                    **T46**

Branch :NT4,User :TT07                    Comment:                         Station Id :FB39

2

**LANDSAFE TITLE**

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063



10/17/2011

*20111399207*

Attn:  WILLIAM ZUNIGA
TS No.  11-0118096
Title Order No. 11-0098278

SPACE ABOVE THIS LINE FOR RECORDER'S USE

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is  $39,945.80, as of 10/12/2011 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

*3*

TS No. 11-0118096

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

   To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

BANK OF AMERICA, N.A.
C/O Bank of America, N.A.
400 National way
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

   If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

   Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

**YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 06/23/2006, executed by RUTH A. ROSENBERG, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 06/30/2006, as Instrument No. 06 1452151 (or Book , Page ) of Official Records in the Office of the County Recorder of Los Angeles County, California.
Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 1,000,000.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :  FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON  03/01/2011  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS FEES.  IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON  07/01/2036  AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

Branch :NT4,User :TT07                    Comment:                    Station Id :FB39

4.

TS No. 11-0118096

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: October 12, 2011    OCT 1 3 2011

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

OCT 1 3 2011

Authorized Signer

Martha Casillas

**Assistant Vice President**

*Form nodorig_2011.3.0_03/2011*

LOS ANGELES,CA                    Page 4 of 5                    Printed on 7/7/2015 11:39:20 AM
Document: ND 2011.1399207

Branch :NT4,User :TT07          Comment:                          Station Id :FB39

5

**Bank of America**
Home Loans

Notice Date:   October 5, 2011

| 11-0118096 |

Ruth A Rosenberg
5351 Bindewald Rd
Torrance, CA  90505

Property Address:
5351 Bindewald Road
Torrance, CA  90505

### CALIFORNIA DECLARATION

I, _Darrell Williams_ , MORTGAGE SERVICING SPECIALIST I of Bank of America, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America Home Loans

☐ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☒ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

10/5/11     Jacksonville, FL
Date and Place

_____
Name of Signor

CA-DECLARATIONS  0638/9508 8/27/2008

# EXHIBIT "J"

Branch :NT4,User :TT07                    Comment:                         Station Id :FB39

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

This page is part of your document - DO NOT DISCARD

## 20150755631



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/24/15 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



L E A D S H E E T



201506240110018

00010773802



006919055

SEQ:
07

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED                    T46

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

LOS ANGELES,CA                    Page 1 of 4                    Printed on 7/7/2015 11:39:21 AM
Document: NT 2015.755631

Branch :NT4,User :TT07          Comment:                    Station Id :FB39

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

06/24/2015

*20150755631*

RECORDING REQUESTED BY:
**STEWART TITLE**

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

APN: 7530-005-014          TS No: CA08005392-14-1          TO No: 11-0098278

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED June 23, 2006.  UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

On July 23, 2015 at 09:00 AM, Vineyard Ballroom, Doubletree Hotel Los Angeles-Norwalk, 13111
Sycamore Drive, Norwalk, CA 90650, MTC Financial Inc. dba Trustee Corps, as the duly Appointed
Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust Recorded on
June 30, 2006 as Instrument No. 06 1452151 of official records in the Office of the Recorder of Los
Angeles County, California, executed by RUTH A. ROSENBERG, A MARRIED WOMAN AS HER SOLE
AND SEPARATE PROPERTY, as Trustor(s), in favor of MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. as nominee for HOMECOMINGS FINANCIAL NETWORK, INC. as Beneficiary, **WILL
SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER**, in lawful money of the United States, all
payable at the time of sale, that certain property situated in said County, California describing the land
therein as: **AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST**

The property heretofore described is being sold "as is"   The street address and other common
designation, if any, of the real property described above is purported to be: **5351 BINDEWALD ROAD,
TORRANCE, CA 90505**

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

LOS ANGELES,CA                Page 2 of 4               Printed on 7/7/2015 11:39:21 AM
Document: NT 2015.755631

Branch :NT4,User :TT07            Comment:                Station Id :FB39

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $1,375,772.21 (Estimated). However, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

### Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

TS No: CA08005392-14-1

Branch :NT4,User :TT07          Comment:          Station Id :FB39

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call Auction.com at 800.280.2832 for information regarding the Trustee's Sale or visit the Internet Web site address www.Auction.com for information regarding the sale of this property, using the file number assigned to this case, CA08005392-14-1. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: June 19, 2015

MTC Financial Inc. dba Trustee Corps
TS No. CA08005392-14-1
17100 Gillette Ave
Irvine, CA 92614
Phone:949-252-8300
TDD: 866-660-4288

Miguel Ochoa, Authorized Signatory

SALE INFORMATION CAN BE OBTAINED ONLINE AT www.Auction.com
FOR AUTOMATED SALES INFORMATION PLEASE CALL:
Auction.com at 800.280.2832

MTC Financial Inc. dba Trustee Corps MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

TS No: CA08005392-14-1

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

LOS ANGELES,CA
Document: NT 2015.755631

Printed on 7/7/2015 11:39:22 AM

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION)

Case Number _____     BC 592230

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judge indicated below. There is more information on the reverse side of this form.

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|---|---|
| | Hon. Kevin C. Brazile | 1 | 534 | | Hon. Elizabeth Allen White | 48 | 506 | |
| | Hon. Barbara A. Meiers | 12 | 636 | | Hon. Deirdre Hill | 49 | 509 | |
| | Hon. Terry A. Green | 14 | 300 | | Hon. John L. Segal | 50 | 508 | |
| | Hon. Richard Fruin | 15 | 307 | | Hon. Mitchell L. Beckloff | 51 | 511 | |
| | Hon. Rita Miller | 16 | 306 | | Hon. Susan Bryant-Deason | 52 | 510 | |
| | Hon. Richard E. Rico | 17 | 309 | | Hon. Steven J. Kleifield | 53 | 513 | |
| | Hon. Stephanie Bowick | 19 | 311 | | Hon. Ernest M. Hiroshige | 54 | 512 | |
| | Hon. Dalila Corral Lyons | 20 | 310 | | Hon. Malcolm H. Mackey | 55 | 515 | |
| | Hon. Robert L. Hess | 24 | 314 | | Hon. Michael Johnson | 56 | 514 | |
| | Hon. Yvette M. Palazuelos | 28 | 318 | | Hon. Rolf M. Treu | 58 | 516 | |
| | Hon. Barbara Scheper | 30 | 400 | | Hon. Gregory Keosian | 61 | 732 | |
| | Hon. Samantha Jessner | 31 | 407 | | Hon. Michael L. Stern | 62 | 600 | |
| | Hon. Mary H. Strobel | 32 | 406 | | Hon. Mark Mooney | 68 | 617 | |
| | Hon. Michael P. Linfield | 34 | 408 | | Hon. William F. Fahey | 69 | 621 | |
| | Hon. Gregory Alarcon | 36 | 410 | | Hon. Suzanne G. Bruguera | 71 | 729 | |
| ✓ | Hon. Marc Marmaro | 37 | 413 | | Hon. Ruth Ann Kwan | 72 | 731 | |
| | Hon. Maureen Duffy-Lewis | 38 | 412 | | Hon. Rafael Ongkeko | 73 | 733 | |
| | Hon. Elizabeth Feffer | 39 | 415 | | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| | Hon. Michelle R. Rosenblatt | 40 | 414 | | Hon. Gail Ruderman Feuer | 78 | 730 | |
| | Hon. Holly E. Kendig | 42 | 416 | | | | | |
| | Hon. Mel Red Recana | 45 | 529 | | Hon. Emile H. Elias | 324 | CCW | |
| | Hon. Frederick C. Shaller | 46 | 500 | | *Provisionally Complex Non-class Action Cases Assignment is Pending Complex Determination | 324 | CCW | |
| | Hon. Debre K. Weintraub | 47 | 507 | | | | | |

### *Complex

All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on AUG 2 4 2015   SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

---

LACIV 036 (new)
LASC Approved 04/11
For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

    It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____ )

➢ _____
(ATTORNEY FOR _____ )

➢ _____
(ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER · | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:   FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "Civil" and then under "General Information").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
(INSERT DATE)                                    (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at www.lasuperiorcourt.org under "Civil", click on "General Information", then click on "Voluntary Efficient Litigation Stipulations".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____                    ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

    ☐    Request for Informal Discovery Conference
    ☐    Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (Insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (Insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11
For Optional Use
       **INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____          ➤   _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date:  _____          _____
                                                          JUDICIAL OFFICER

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| SUSAN M. MURPHY, ESQ. (SBN 185335)<br>ADVOCATE LEGAL<br>5455 WILSHIRE BOULEVARD, SUITE 2119<br>LOS ANGELES, CA 90036<br>TELEPHONE NO.: (323) 692-7499   FAX NO.: (800) 878-7336<br>ATTORNEY FOR *(Name):* PLAINTIFFS | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>AUG 24 2015<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By Cristina Grijalva, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS: 111 NORTH HILL STREET
CITY AND ZIP CODE: LOS ANGELES, CA
BRANCH NAME: CENTRAL DISTRICT

CASE NAME:
ROSENBERG v. BANK OF AMERICA, ET AL.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited   ☐ Limited<br>(Amount      (Amount<br>demanded    demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter   ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC 592230<br><br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☑ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* FOUR
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: AUGUST 19, 2015

SUSAN M. MURPHY
(TYPE OR PRINT NAME)                                    ► (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box** for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment (*non-domestic relations*)
Sister State Judgment
Administrative Agency Award (*not unpaid taxes*)
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-harassment*)
Mechanics Lien
Other Commercial Complaint Case (*non-tort/non-complex*)
Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

| SHORT TITLE: ROSENBERG v. BANK OF AMERICA, et al. | CASE NUMBER BC 5 9 2 2 3 0 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ✓YES    CLASS ACTION?  YES  LIMITED CASE?  YES   TIME ESTIMATED FOR TRIAL 5 _____ HOURS/ ✓DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.3.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office
11. Mandatory Filing Location (Hub Case)

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: | CASE NUMBER |
|---|---|
| ROSENBERG v. BANK OF AMERICA, et al. | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: ROSENBERG v. BANK OF AMERICA, et al. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 | Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 | Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151 | Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152 | Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153 | Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150 | Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003 | Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 | Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006 | Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 | Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036 | Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 | Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141 | Sister State Judgment | 2., 9. |
| | | ☐ A6160 | Abstract of Judgment | 2., 6. |
| | | ☐ A6107 | Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140 | Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114 | Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112 | Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☑ A6033 | Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 | Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040 | Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011 | Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000 | Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113 | Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 | Civil Harassment | 2., 3., 9. |
| | | ☐ A6123 | Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124 | Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190 | Election Contest | 2. |
| | | ☐ A6110 | Petition for Change of Name | 2., 7. |
| | | ☐ A6170 | Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100 | Other Civil Petition | 2., 9. |

LACIV 109 (Rev 3/15)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3

Page 3 of 4

| SHORT TITLE: ROSENBERG v. BANK OF AMERICA, et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| **REASON:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☐ 1. ☒ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7.  ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br><br>90505 |
|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| | | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the STANLEY MOSK___ courthouse in the CENTRAL_____District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.3, subd.(a).

Dated: AUGUST 19, 2015___

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/15).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 3/15)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

**EXHIBIT "2"**


## CT Corporation

# Service of Process Transmittal
08/26/2015
CT Log Number 527717466

TO: Gena Thornton
Selene Finance LP
8201 Cypress Plaza Dr
Jacksonville, FL 32256-4423

RE: **Process Served in California**

FOR: Selene Finance LP  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Ruth A. Rosenberg, etc. and Alfredo Rosenberg, etc., Pltfs. vs. Bank of American, N.A., etc., et al. including Selene Finance, LP, etc., Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Attachment(s), Complaint, Verification, Exhibit(s), Notice, Instructions, Stipulations, Conference, Cover Sheet, Addendum and Statement |
| **COURT/AGENCY:** | Los Angeles County - Superior Court - Hill Street, CA Case # BC592230 |
| **NATURE OF ACTION:** | Bank fraud and conspiracy to commit bank fraud in violation - violation of 15 U.S.C. 1692a(6) for attempting to collect a debt that is owed to another |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/26/2015 at 14:45 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Susan M. Murphy ADVOCATE LEGAL 5455 Wilshire Boulevard Suite 2119 Los Angeles, CA 90036 323-692-7499 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/27/2015, Expected Purge Date: 09/01/2015 |
| | Image SOP |
| | Email Notification,  Pam Mandeville  pam.mandeville@selenefinance.com |
| | Email Notification,  Rebekah Leonard  rebekah.leonard@selenefinance.com |
| | Email Notification,  Gena Thornton  Gena.Thornton@selenefinance.com |
| | Email Notification,  Christine Sahyers  christine.sahyers@selenefinance.com |
| | Email Notification,  Nate Tincher  Nathaniel.Tincher@selenefinance.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# EXHIBIT "3"

Case Summary

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

Case Number:  BC592230
RUTH A ROSENBERG ET AL VS BANK OF AMERICA N A ET AL

Filing Date:  08/24/2015
Case Type:  Racketeering Case (General Jurisdiction)
Status:  Pending


Future Hearings

None

Documents Filed | Proceeding Information


Parties

ADVOCATE LEGAL - Attorney for Plaintiff/Petitioner

BANK OF AMERICA N.A. - Defendant/Respondent

CHRISTIANA TRUST - Defendant/Respondent's DBA

DOES 1 THROUGH 50 - Defendant/Respondent

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS - Defendant/Respondent

MTC FINANCIAL INC. - Defendant/Respondent

ROSENBERG ALFREDO - Plaintiff/Petitioner

ROSENBERG RUTH A. - Plaintiff/Petitioner

SELENE FINANCE LP - Defendant/Respondent

TRUSTEE CORPS - Defendant/Respondent's DBA

WILMINGTON SAVINGS FUND SOCIETY FSB - Defendant/Respondent


Case Information | Party Information | Proceeding Information


Documents Filed (Filing dates listed in descending order)

**08/31/2015** Proof-Service/Summons
Filed by Attorney for Plaintiff/Petitioner

**08/28/2015** Proof-Service/Summons
Filed by Attorney for Plaintiff/Petitioner

**08/27/2015** Proof-Service/Summons
Filed by Attorney for Plaintiff/Petitioner

**08/24/2015** Complaint


Case Information | Party Information | Documents Filed

Proceedings Held (Proceeding dates listed in descending order)
None


Case Information | Party Information | Documents Filed | Proceeding Information

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and not a party to the within action.  My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660.  I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service.  Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On September 25, 2015, I served the within **1) CIVIL COVER SHEET, 2) CERTIFICATION AND NOTICE OF INTERESTED PARTIES and 3) NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331 and 1441(a)** on all interested parties in this action as follows:

[X]    by placing [  ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Susan M. Murphy, Esq.
**ADVOCATE LEGAL**
5455 Wilshire Boulevard, Suite 2119
Los Angeles, CA 90036
(323) 692-7499; Fax: (800) 878-7336
susan@advocatelegal.org
***Attorney for Plaintiffs, Alfredo Rosenberg and Ruth A. Rosenberg***

[X]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[  ]    (BY OVERNITE DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by an overnight delivery carrier with the delivery fees provided for.

[X]    (**FEDERAL**) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 25, 2015, at Newport Beach, California.

Cielo Tucay