Susan M. Murphy (SBN: 185335)
susan@advocatelegal.org
ADVOCATE LEGAL
5455 Wilshire Boulevard, Suite 2119
Los Angeles, California 90036
Telephone:  (323) 692-7499
Facsimile:   (800) 878-7336

Attorney for Plaintiffs
RUTH A. ROSENBERG and
ALFREDO ROSENBERG

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DISTRICT

| | |
|---|---|
| RUTH A. ROSENBERG, an individual and ALFREDO ROSENBERG, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., a national banking association; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. a Delaware corporation; MTC FINANCIAL INC., LP, A California Corporation, d/b/a TRUSTEE CORPS; SELENE FINANCE, LP, a Delaware limited partnership; WILMINGTON SAVINGS FUND SOCIETY FSB, a Delaware Corporation, d/b/A CHRISTIANA TRUST, not in its individual capacity, but solely as trustee for BCAT 2014-4TT; and DOES 1 through 50, inclusive,<br><br>        Defendants. | CASE NO.: 2:15-cv-7518-PSG-AGRx<br><br>PLAINTIFFS RUTH A. ROSENBERG & ALFREDO ROSENBERG'S OPPOSITION TO MOTION TO DISMISS BY DEFENDANT BANK OF AMERICA, N.A.<br><br>Date Filed:     August  24, 2015<br>Date Removed: September 25, 2015<br><br>Judge:       Hon. Philip S. Gutierrez<br>Courtroom:    880 (Roybal Courthouse)<br><br>Hearing Date: November 30, 2015<br>Hearing Time: 1:30 p.m. |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES …………………………………………………. iii

INTRODUCTION     ………………………………...………………… 1

STATEMENT OF FACTS ...…………………………………………… 2

STANDARD OF REVIEW…………………………………………….. 8

LEGAL ARGUMENT ……………………………………………… 9

I.     PLAINTIFF ALFREDO ROSENBERG HAS A COMMUNITY

        PROPERTY INTEREST IN THE FUNDS USED TO

        PAY DEFENDANTS………………………………………….... 9

II.     PLAINTIFF'S DUE PROCESS RIGHTS ARE NOT

        PREEMPTED BY THE DOCTRINES OF RES JUDICATA

        AND COLLATERAL ESTOPPEL ………………………………… 10

    A. PLAINTIFFS' CLAIMS OCCURRED OVER A DIFFERENT

        PERIOD OF TIME, ADDRESS DIFFERENT ACTIONS BY

        DEFENDANTS, AND ALLEGE DIFFERENT INJURIES

        TO PLAINTIFFS ……………………………………….………10

    B. THE ISSUES IN PLAINTIFFS' CURRENT COMPLAINT WERE NOT

        LITTIGATED IN THE PRIOR COMPLAINT …………………………….. 12

III.     PLAINTIFFS' RICO CLAIM FOR DAMAGES DOES

        NOT REQUIRE PROSECUTION OR INDICTMENT

        OF DEFENDANTS……………………………………………… 13

    A. DEFENDANT BOA'S ACTIONS ARE "CHARGEABLE" AND

    "INDICTABLE" UNDER FEDERAL CRIMINAL STATUTES WHICH IS

    SUFFICIENT FOR PLAINTIFFS' CLAIM ………………………….. 13

    B. PLAINTIFFS' INJURIES RESULT FROM THE PREDICATE

    ACTS OF DEFENDANT BOA AND DEFENDANT MERS IN

    CONSPIRACY.……………………………………………… 16

IV.    DEFENDANTS VIOLATED THE FDCPA BECAUSE

      THEY WERE NEITHER BENEFICIARY NOR SERVICER …………….. 18

V.    PLAINTIFFS HAVE PROPERLY PLED A VIOLATION

      OF THE BUSINESS AND PROFESSIONS CODE §17200 ET SEQ

      BECAUSE THEY  HAVE PLED VIOLATIONS OF

      LAW...........................................................................................................20


CONCLUSION  ……………………………………………………….. …... 21


NOTICE OF ELECTRONIC FILING……………………………………………

TABLE OF AUTHORITIES

FEDERAL CASES

*Pareto v. F.D.I.C.,* 139 F. 3d 696, 699 (9th Cir. 1988.) ……………………..…. 8

*Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) ……………….. 8

*Parks Sch. Of Bus. Inc. v Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995) ……………... 8

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009)……………………..8, 9,17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955 (2007.)……………..….8

*Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996.) …………………………….... 9

*Chaset v. Fleer/Skybox Int'l,* 300 F.3d 1083, 1086 (9th Cir. 2002.)……………………..9

*Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992.) …………………………………………………10

*Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 279, 112 S.Ct. 1311, 1323 (1992.)……. ………………………………………………..…10

*Sedima v. Imrex Co.*, 473 U.S. 479, 481, 105 S.Ct. 3275, 3277 (1985.)………………………………………………..……………13

*Dymits v. American Brands, Inc.*, 1996 U.S. Dist. LEXIS 19742, *25 (N.D. Cal. Dec. 31, 1996)…………………………………………13

*United States v. Private Sanitation Indus. Ass'n*, 793 F. Supp. 1114, 1129 (E.D.N.Y. 1992)…………………………………………………….13,14

*Pedersen v. Greenpoint Mortgage Funding, Inc.*, 900 F. Supp. 2d 1071, 1082 (E.D. Cal. 2012).) …………………………………………….…….…...14

*Heintz v. Jenkins*, 514 U.S. 291, 292, 115 S.Ct. 1489, 1490 (1995)…………..……..19

*Griley v. Nat'l City Mortg.*, 2011 U.S. Dist. LEXIS 5061, *6, 2011 WL 219574 (E.D. Cal. Jan. 18, 2011)……………………………………..……………..20

*Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010.) ………………..… 20

STATE CASES

*Planning & Conservation League v. Castaic Lake Water Agency*, 180 Cal. App. 4th 210, 226, 103 Cal. Rptr. 3d 124, 138 (2009)…...……………………………………………10

*Fed'n of Hillside & Canyon Assns. v. City of L.A.*, 126 Cal. App. 4th 1180, 1202, 24 Cal. Rptr. 3d 543, 557 (2004.) …………………………………………………………...11

*Bernhard v. Bank of Am. Nat'l Tr. & Sav. Asso.*, 19 Cal. 2d 807, 811, 122 P.2d 892, 894 (1942.)…………………………………………………………………..…………11

*Branson v. Sun-Diamond Growers*, 24 Cal. App. 4th 327, 344, 29 Cal. Rptr. 2d 314, 323 (1994.) …………………………………………………………………………..11

*People v. Sims*, 32 Cal. 3d 468, 484, 186 Cal. Rptr. 77, 87, 651 P.2d 321, 331 (1982.) ………………………………………………………………………12

*Glaski v. Bank of Am.*, 218 Cal. App. 4th 1079, 1085-86, 160 Cal. Rptr. 3d 449, 454 (2013.) …………………………………………………..……………18

*Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1499, 82 Cal. Rptr. 2d 368, 371 (1999);…………………………………………………………………… 20

*Buller v. Sutter Health*, 160 Cal. App. 4th 981, 982, 74 Cal. Rptr. 3d 47, 49 (2008) …………………………………………………………………20


FEDERAL STATUTES

Federal Rules of Civil Procedure 12(b)(6) ………………………………….......8,12,17

18 U.S.C. §1341 ………. …………………………………….…………………..8,13,20

18U.S.C. §1344…………………………………………………………………....8,13,20

18 U.S.C. 1961 ………………………………………………… ...…………..8,14

18 U.S.C. §1962 …………………………………………………………….…9,10

18 U.S.C. §1964(c)……………………………………………………………….9

18 U.S. Code §1961 (1) (B)……………………………………………...……....13

18 U.S.C. §1861…………………………………………………………...…17,18

18U.S.C. §1962(c)……………………………………………………..…20

15 U.S.C. §1692e………………………….....……………………………..19,20

18U.S.C. §1962(d)……………………………..…………………………………20

STATE STATUTES

Cal Bus & Prof Code § 17200 ……………………..…………………………...20

OTHER AUTHORITIES

Christopher Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory,* 53 Wm. & Mary L. Review 116l R.K. Arnold, *Viewpoint,* Inside MERS, Jan./ Feb. 2004, at …………………......……......1f.n. 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Of the allegations that Plaintiffs make in their complaint it is not plausibly subject to dispute that Plaintiff RUTH A. ROSENBURG's loan was intended for securitization by originator Homecoming Financial Network, Inc. (HOMECOMING). (Comp. ¶19; Ex. C.)  This is because of the appearance of Defendant Mortgage Electronic Registration Systems, Inc. (MERS) on the deed of trust as a beneficiary. (Comp. EX. C.) Securitization drove the decision to create Defendant MERS so that servicers like Defendant Bank of America N.A. (BOA), a servicer/ owner of Defendant MERS, could save money on the multiple recording fees demanded by securitization while simultaneously pretending to "own" every mortgage in the country.[1]  Any other explanation for why a mortgagee would assign beneficiary rights to a shell company controlled by the mortgage servicing industry is ludicrous.

It is also not reasonably subject to dispute that the years 2008-2011 were a free-fall for the mortgage industry where the country's top home loan originators like HOMECOMING, IndyMac Federal Bank, Downy Savings and Loan, Wachovia, Washington Mutual, New Century, American Home Mortgage and Countrywide Bank, FSB (COUNTRYWIDE) either failed (like dominos) and filed for bankruptcy or were

---

[1] Christopher Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory,* 53 Wm. & Mary L. Review 116l; R.K. Arnold, *Viewpoint,* Inside MERS, Jan./ Feb. 2004, at 1 ("[O]ur mission is to capture every mortgage loan in the country.").

acquired by other financial institutions.[2] HOMECOMING stopped funding loans and was shifted by its parent company to RESCAP which later filed for bankruptcy; servicing rights for Plaintiff RUTH A. ROSENBERG's loan were sold from HOMECOMING to COUNTRYWIDE and eventually to Defendant BOA while Plaintiff was in default trying to get a loan modification. (Comp. ¶s 25, 28, 35, & 52.) Since the MERS system tracks only servicing rights, since the originator was in a Chapter 11 bankruptcy, and since the transfer of servicing rights to Defendant BOA occurred while Plaintiff was already in default, it is understandable that Defendant BOA referred Plaintiffs' loan to their "triage" unit and completely plausible that RESCAP/ HOMECOMING and the securitized trust all lost track of her loan. (Comp. ¶35.)

STATEMENT OF FACTS

On December 18, 1995 Plaintiffs RUTH ROSENBERG and ALFREDO ROSENBERG became owners of 5351 Bindewal Road, Torrance, California 90505 ("the Bindewal Road property") by Grant Deed (Los Angeles County Recorder Doc. No. 952006785) as husband and wife as Joint Tenants. (Comp. Ex. A.) On or about June 30, 2006 Plaintiff ALFREDO ROSENBERG granted the Bindewal Road property to Plaintiff RUTH A. ROSENBERG as a married woman as her sole and separate property. (Comp. ¶17 & Ex. B.) On or about June 30, 2006 Plaintiff RUTH ROSENBERG

---

[2] *See:* Federal Deposit Insurance Corporation (FDIC) website *Available at (https://www.fdic.gov/bank/individual/failed/banklist.html)*

originated a Deed of Trust in favor of HOMECOMING  in the amount of one million dollars ($1,000,000.00). (Comp. ¶ 18 & Ex. C.)

Plaintiff received a subprime mortgage originated for securitization that was issued according to the MERS scheme with a MIN (MERS Identification Number) on the first page of the Deed of Trust. (Comp. ¶11 & Ex. C.)  The "Adjustable Rate Balloon Rider" attached to Plaintiff's Deed of Trust shows it to be a "pick-a-pay" loan which allowed for four (4) payment options which were 1) the minimum payment option which would cause negative amortization, 2) an interest only payment, 3) a payment amortized over thirty (30) years, and 4) a payment amortized over fifteen (15) years. (Comp. Ex. C. pages 30-31¶ H.)  Beginning on or about July 1, 2006 Plaintiffs made mortgage payments to HOMECOMING as servicer. (Comp. ¶ 21.)  Beginning on or about June 1, 2007 Plaintiffs made their mortgage payments to COUNTRYWIDE BANK, FSB (COUNTRYWIDE) as servicer. (Comp. ¶s 22-23.)  On or about December 1, 2007, GMAC became ALLY BANK and shifted all its bad divisions, including HOMECOMING, to a new subsidiary called RESCAP.[3]

On January 11, 2008 COUNTRYWIDE was purchased by Defendant BOA.[4] Beginning on or about June 1, 2008 Plaintiff missed mortgage payments so as to receive a loan modification from servicer COUNTRYWIDE.  (Comp. ¶27.)  On or about August

---

[3]The Wall Street Journal, May 14, 2012: "ResCap Files for Protection Under Chapter 11," by Andrew R. Johnson, *Available at:* (http://www.wsj.com/articles/SB10001424052702304192704577403782887891126) See also: http://rescapliquidatingtrust.com/)
[4] "Countrywide rescue: $4 billion," by David Ellis, CNNMoney.com, *Available at:* (http://money.cnn.com/2008/01/11/news/companies/boa_countrywide/).

1, 2008, RESCAP, the parent company of HOMECOMING, shut down and notified all brokers that they would no longer originate HOMECOMING loans through their wholesale channel. (Comp. ¶25.)  On September 1, 2008 Plaintiff's mortgage bill from COUNTRYWIDE showed a principal balance of one million seventy four thousand four-hundred sixty nine dollars and nineteen cents ($1,074,469.19) which had increased their principal balance by approximately seventy-four thousand dollars ($74,000.00) in negative amortization. (Comp. Ex. D.)

Beginning on or about May 1, 2009 Plaintiffs began receiving mortgage payments from Defendant Bank of America, N.A. (BOA) as servicer while in default. (Comp. ¶29.)  On or about September 10, 2009 Plaintiff RUTH A. ROSENBERG entered into a loan modification with Defendant BOA. (Comp. ¶30 & Ex. F.)  On or about October 1, 2009 Plaintiff began paying Defendant BOA the payment stated on their loan modification which was three thousand fifty-five dollars and fifteen cents ($3,055.15). (Comp. ¶32 & Ex. F.)

On or about May 1, 2010 Defendant BOA began sending delinquency notices even though Plaintiff was not in default of the loan modification. (Comp. Ex. ¶38.)  On or about June 21, 2010, Defendant BOA's agent SARNICKY told Plaintiff to pay an increased payment of three thousand three-hundred and eighty-eight dollars ($3,388.00) due to an escrow shortfall. (Comp. ¶35.)  Beginning July 1, 2010 Plaintiff made the increased payment. (Comp. ¶38.)

On October 18, 2010 Defendant BOA employee Nicholas Clavadetscher, in his capacity as "certifying officer" for Defendant MERS, recorded an ASSIGNMENT OF THE DEED OF TRUST from HOMECOMING to BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP ("BAC") on the authority of MERS "solely as nominee for Homecomings Financial Network, Inc." (RJN-2.)  An ASSIGNMENT in anticipation of foreclosure is common, but Plaintiff was not in default at the time of this ASSIGNMENT and there was no reason for a foreclosure to be imminent. (Comp. ¶38.) Defendant BOA assumed the servicing rights for Plaintiff's loan when it assumed the assets of COUNTRYWIDE, but this was an ASSIGNMENT from the lender to a servicer that bypassed the securitized trust as beneficiary. (Comp. ¶19 & Ex. C.)

On or about March 5, 2011, Defendant BOA *again* told Plaintiff that she had to pay an increased payment which would now be three-thousand eight hundred eighty-eight dollars ($3,888.00) due to an escrow shortfall. (Comp. ¶40.)  Beginning on or about March 5, 2011 Plaintiff made the new increased payment. (Comp. ¶40.)  On or before March 1, 2011, Plaintiffs allege that Defendant BOA wiped all history of servicing and beneficiary rights from the MERS database. (Comp. ¶s 36-37 & EX. F.)

On April 15, 2011 Defendant BOA employee JOHNSON, in her capacity as "Assistant Secretary" of MERS, authorized a second (2d) ASSIGNMENT OF THE DEED OF TRUST from the original lender to Defendant BOA. (Comp. Ex. F; RJN-3.) This ASSIGNMENT named the original lender as "MERS, Inc., as Nominee for

Homecoming Financial Network, Inc." and assigned the mortgage to BAC in the same capacity as the prior ASSIGNMENT. (Comp. Ex. J; RJN-2; RJN-3.)  Plaintiffs' payments were current, not in default, and there was therefore still no reason to anticipate foreclosure. (EFC Doc. 8, p.3, l. 21-23; Comp. ¶49; RJN-3.)

On October 17, 2011 Defendant BOA caused a NOTICE OF DEFAULT to be recorded by trustee Recontrust even though Plaintiff was not in default of the loan modification. (Comp. ¶48 & Ex. I.)  This is contrary to Defendants' allegation in their MTD that Plaintiff was in default at the time of recording of the NOTICE OF DEFAULT. (Comp.¶48; ECF Doc. 21, p.2, ls.24-27.) On or about November 1, 2011 Defendant BOA refused payment from Plaintiff which was the first payment missed since Plaintiffs began paying under their modification on or about October 1, 2009. (Comp. ¶50.)

On November 3, 2011 Plaintiff filed a verified complaint (case no: BC472813) in Los Angeles Superior Court against BAC Home Loans Servicing, LP and Defendant Bank of America, N.A. which was removed to United States Central District Court (CV11 10597-CAS-CWx) on December 22, 2011.  On May 14, 2012 RESCP and its subsidiary HOMECOMING went into Chapter 11 Reorganization. (Comp. ¶52.)

On May 20, 2013 the Court dismissed Plaintiff RUTH A. ROSENBERG's First Amended Complaint _with prejudice_ after Plaintiff failed to file a second amended complaint as permitted by the Court.[5]  (CV11 10597-CAS-CWx – ECF Doc. 33.)

On or about December 13, 2013, Plaintiff RUTH A. ROSENBERG received a mortgage statement from Defendant BOA in the amount of three thousand six hundred twenty-seven dollars and forty-five cents ($3,627.45).  (Comp. ¶55.)  Plaintiffs made payments of this amount from January 1, 2014 until June 1, 2014. (Comp. ¶55.)

On December 17, 2013 Defendant BOA authorized trustee Recontrust to record a NOTICE of TRUSTEE's SALE for January 9, 2014. (RJN-6.)  On January 8, 2014 Plaintiff RUTH A. ROSENBERG filed a Chapter 13 Bankruptcy.[6]

On or about June 1, 2014 Defendant BOA refused Plaintiffs' payment of three thousand six hundred twenty-seven dollars and forty-five cents ($3,627.45). (Comp. ¶55.)  On June 24, 2014 Defendant TRUSTEE CORPS, as an agent of Defendant BOA, recorded another NOTICE OF TRUSTEE's SALE pursuant to the power of sale in the Deed of Trust "in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Homecomings Financial Network, Inc. as Beneficiary." (Comp. ¶56 & EXs. C & J; RJN-9.)  Defendants TRUSTEE CORPS and BOA thereby continued to use the MERS identity after all record of Plaintiff's loan had been wiped from the MERS system and

---

[5] Plaintiffs' complaint mistakenly states in ¶51 that this was a dismissal _without_ prejudice.
[6] Bankruptcy case number 2-14-bk-10381-VZ  - filed January 8, 2014 dismissed October 28, 2014.

Defendant BOA had claimed ownership through recorded ASSIGNMENTS to themselves.

On September 25, 2015 Plaintiffs RUTH A. ROSENBERG and ALFREDO ROSENBERG filed the instant complaint for Civil RICO remedies authorized by 18 U.S.C. 1961 for statutory damages to both Plaintiffs resulting from actions by Defendants BOA and MERS to force Plaintiff RUTH E. ROSENBERG into foreclosure so as to cover up their bank and mail fraud under 18 U.S.C. §1341 and §1344.

STANDARD OF REVIEW

When considering a Rule 12(b)(6) Motion to Dismiss this Court must accept as true all allegations in the complaint as well as inferences to be drawn from them *Pareto v. F.D.I.C.,* 139 F. 3d 696, 699 (9th Cir. 1988.)  The complaint must be read in the light most favorable to the non-moving party. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); *Parks Sch. Of Bus. Inc. v Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).  Legal conclusions can provide the framework of a complaint, but they must be supported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955 (2007.) Determining whether a complaint states a plausible claim for relief is "a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S. Ct. at 1950.

LEGAL ARGUMENT

I.   PLAINTIFF ALFREDO ROSENBERG HAS A COMMUNITY PROPERTY INTEREST IN THE FUNDS USED TO PAY DEFENDANTS.

The elements of a civil claim under the Racketeer Influenced and Corrupt Organizations (RICO) Act are "(1) conduct; (2) of an enterprise; (3) through a pattern (4) of racketeering activities (known as 'predicate acts'); (5) causing injury to the plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996.)  In a Civil RICO claim under 18 U.S.C. §1962 a RICO plaintiff must make a threshold showing that the Plaintiff suffered an injury to business or property and that 2) the plaintiff's injury was caused by the defendant's violation of §1962. 18 U.S.C. §1964(c).  The fifth element has two subparts: the plaintiff must show that the injury was proximately caused by the conduct and that he has suffered a concrete financial loss. *Chaset v. Fleer/Skybox Int'l,* 300 F.3d 1083, 1086 (9th Cir. 2002.)

The predicate acts by Defendant BOA to fraudulently ASSIGN this loan to themselves and to wipe all history of the loan from the MERS database are connected to the actions to force Plaintiff RUTH A. ROSENBERG into foreclosure by (twice) upping her payment amount and eventually refusing her payments. (Comp. ¶65.)  Although Plaintiff RUTH A. ROSENBERG is the titled owner of the Bindewal Road property she

alleges that the payments she made to Defendant BOA were not remitted to her actual beneficiary which was a securitized trust and/ or the RESCAP/ HOMECOMING bankruptcy, but were kept by Defendant. (Comp. ¶68.)   These payments came from Plaintiffs' community marital funds. (Comp. ¶68.)

Congress enacted RICO "to combat organized crime, not to provide a federal cause of action and treble damages for personal injuries.  *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992.)  Therefore a RICO plaintiff only has standing if, and can only recover damages to the extent that, he has been injured in his business or property by [reason of] the conduct constituting the violation." *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 279, 112 S.Ct. 1311, 1323 (1992.)  Since standing in a Civil RICO complaint is related to injury, and since Plaintiff ALFREDO ROSENBERG has been injured, he has standing under 18 U.S.C. §1962.

II.   PLAINTIFFS' DUE PROCESS RIGHTS ARE NOT PREEMPTED BY THE
        DOCTRINES OF RES JUDICATA AND COLLATERAL ESTOPPEL

A.   PLAINTIFFS' CLAIMS OCCURRED OVER A DIFFERENT PERIOD
       OF TIME, ADDRESS DIFFERENT ACTIONS BY DEFENDANTS,
       AND ALLEGE DIFFERENT INJURIES TO PLAINTIFFS.

The doctrine of Res Judicata, or claim preclusion, prevents re-litigation of the same causes of action in a second suit between the same parties or parties in privity with them. *Planning & Conservation League v. Castaic Lake Water Agency*, 180 Cal. App. 4th 210,

226, 103 Cal. Rptr. 3d 124, 138 (2009).  Claim preclusion applies when "(1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the same cause of action as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding." *Fed'n of Hillside & Canyon Assns. v. City of L.A.*, 126 Cal. App. 4th 1180, 1202, 24 Cal. Rptr. 3d 543, 557 (2004.)   However, the doctrine of res judicata must conform to the mandate of due process of law that no person be deprived of personal or property rights by a judgment without notice and an opportunity to be heard. *Bernhard v. Bank of Am. Nat'l Tr. & Sav. Asso.*, 19 Cal. 2d 807, 811, 122 P.2d 892, 894 (1942.)

Plaintiff RUTH ROSENBERG's prior complaint contains different causes of action and addresses unauthorized additions to Plaintiff's loan balance that occurred prior to the loan modification she signed on September 10, 2009. (CV11 10597-CAS-CWx – ECF Doc. 1 ¶19.)  Plaintiffs' current complaint makes claims based on events that occurred after that time and damages incurred after the prior complaint had been dismissed. (Comp. ¶55.)  The doctrine of Res Judicata does not apply where Plaintiff was unable to rely on a theory or to seek a remedy because the damages occurred after adjudication. *Branson v. Sun-Diamond Growers*, 24 Cal. App. 4th 327, 344, 29 Cal. Rptr. 2d 314, 323 (1994.)

//

### B. THE ISSUES IN PLAINTIFFS' CURRENT COMPLAINT WERE NOT LITIGATED IN THE PRIOR COMPLAINT

The doctrine of Res Judicata bars *claims* that have either been litigated or that could have been litigated from being litigated again and the doctrine of collateral estoppel bars *issues* that have been litigated from being litigated again. *People v. Sims*, 32 Cal. 3d 468, 484, 186 Cal. Rptr. 77, 87, 651 P.2d 321, 331 (1982.)  *People v. Sims* enumerated the three essential elements necessary to bar re-litigation of an issue based on the doctrine of collateral estoppel which are "if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." *Sims,* supra at 484.  In applying the first *Sims* element, the issue of injury related to criminal bank and mail fraud, and the actions taken to cover it up, was not previously litigated at the prior proceeding. *Sims,* supra at 484.

Defendants 12(b)(6) motion reframes the issues in the current complaint to be the issue of the escrow shortage and the issue of (wrongful) foreclosure but these are not Plaintiffs' causes of action or issues. (Comp. ¶s 27-30.)  What is at issue in the instant complaint is whether one financial institution (Defendant BOA) stole from another financial institution (the RESCAP/ HOMECOMING bankruptcy and/or the securitized trust) and whether Plaintiff can plausibly show this by a preponderance of the evidence.

*Sedima v. Imrex Co.*, 473 U.S. 479, 481, 105 S.Ct. 3275, 3277 (1985.)  What is also at issue is whether Plaintiffs can show that they have injuries and that Defendants' actions proximately caused these injuries. *Dymits v. American Brands, Inc*., 1996 U.S. Dist. LEXIS 19742, *25 (N.D. Cal. Dec. 31, 1996). The judgment that Plaintiffs seek is not a contract judgment, but a judgment that the "chargeable" actions taken against Plaintiff RUTH A. ROSENBERG by Defendants BOA and Defendant MERS resulted in injuries to both Plaintiffs. *Sedima v. Imrex Co.*, 473 U.S.at 481; 18 U.S.C. §1341 and §1344.

III.   PLAINTIFFS RICO CLAIM FOR DAMAGES DOES NOT REQUIRE PROSECUTION OF OR INDICTMENT OF DEFENDANTS.

    A. DEFENDANT BOA'S ACTIONS ARE "CHARGEABLE" AND "INDICTABLE" UNDER FEDERAL CRIMINAL STATUTES WHICH IS SUFFICIENT FOR PLAINTIFFS' CLAIMS.

Plaintiffs' allegations of criminal acts in their complaint are not presented so as to charge or indict Defendants, but as predicate acts of racketeering activity sufficient to bring a Civil RICO claim. (ECF Doc. 21 p. 9, l. 14-16; Comp. ¶65.)  For the purposes of a Civil RICO complaint predicate acts of racketeering activity need not be charged or indicted by any court to be tethered to Plaintiffs' Civil RICO complaint for damages. 18 U.S. Code §1961 (1) (B); *United States v. Private Sanitation Indus. Ass'n*, 793 F. Supp. 1114, 1129 (E.D.N.Y. 1992).  These predicate acts need only be chargeable and punishable under certain state law felony classifications or indictable under specific

federal criminal provisions. *United States v. Private Sanitation Indus. Ass'n*, 793 F. Supp. 1114, 1120 (E.D.N.Y. 1992).

Defendant BOA cites *Pederson v. Greenpoint Mtge. Funding Inc.* for the proposition that the "robo-signing" of ASSIGNMENTS – the term Defendant uses to describe the MERS business model of allowing servicer employees to download corporate documents and make themselves corporate officers so as to execute assignments – cannot be actionable because it does not damage borrowers, but this a general conclusion not supported by *Pederson*. (ECF Doc. 21 p. 9 fn. 2.; *Pedersen v. Greenpoint Mortgage Funding, Inc.*, 900 F. Supp. 2d 1071, 1082 (E.D. Cal. 2012).)  *Pederson*, presented no predicate acts under 18 U.S.C. §1961 and named only general acts by defendants which it described as "criminal" including the use of the MERS corporation to foreclose on a loan. *Pederson,* supra at 1079.  *Pederson* does not stand for the assertion that the MERS shell company never does damage to a borrower as Defendant claims here. (*Pederson,* supra at 1082; ECF Doc. 21 p. 9 fn. 2.)

In *Pederson* the plaintiff made non-specific allegations that defendants perpetrated a fraud by predicate acts that included writing loan documents and converting plaintiff's loan to a mortgage-backed security. *Pederson,* supra at 1082.  Plaintiffs here have alleged predicate acts of bank fraud and mail fraud including 1) that Defendant BOA ASSIGNED a loan to themselves that belonged to the RESCAP/ HOMECOMING Bankruptcy (RJN 2 & 3; Comp. ¶42 & Ex. F), 2) that Defendant BOA wiped all trace of

their loan from the MERS database to hide the connection to their true beneficiary (Comp. ¶36 & Ex. J), and 3) that Defendants used the mail to initiate foreclosure when Plaintiff had not defaulted. (Comp. ¶s 38 & 48-49).  The predicate acts in Plaintiffs' complaint by Defendant BOA and Defendant MERS in conspiracy that caused injury to Plaintiffs are:

1. Defendant BOA ASSIGNED Plaintiff's Deed of Trust to Defendant BOA to defraud the true beneficiary which was RESCAP/ HOMECOMING. (Comp. ¶63.1.)

2. Defendant BOA removed all trace of Plaintiff's loan from the MERS system to hide any link to the RESCAP/ HOMECOMING bankruptcy or the securitized trust. (Comp. ¶63.2.)

3. Defendant BOA and Defendant MERS recording a SUBSTIUTION OF TRUSTEE as a beneficiary. (Comp. ¶63.3.)

4. Defendant BOA and Defendant MERS recorded a NOTICE OF DEFAULT with Defendant BOA as a beneficiary. (Comp. ¶63.4.)

5. Defendant BOA and Defendant MERS recorded a NOTICE OF TRUSTEE's SALE with MERS as a "nominee" for HOMECOMING. (Comp. ¶63.)

Plaintiffs have also alleged damages to themselves that are tethered to these actions of Defendants which are the actions taken by Defendant BOA and Defendant MERS in

conspiracy to force Plaintiff RUTH A. ROSENBERG into foreclosure so as to hide their fraud. (Comp. ¶1.)  These actions include:

1.  Defendant BOA unilaterally increased Plaintiff RUTH ROSENBERG's mortgage payments on two occasions so that Plaintiffs were paying eight-hundred-thirty-two dollars and eighty-five cents more than the amount on their modification. (Comp. ¶s 35-40.)

2.  On or about November 1, 2011 Defendant BOA reported to the credit agencies that Plaintiff RUTH ROSENBERG's last mortgage payment was February 1, 2011 which was a false statement since she was current at that time. (Comp. ¶52.)

3.  On November 1, 2011, after Plaintiffs had met both unilateral increases in the modified payment, Defendant BOA stopped accepting their payments thereby forcing Plaintiff RUTH ROSENBERG into foreclosure. (Comp. ¶50.)

4.  At all times Plaintiffs have been blocked from making payments to their actual beneficiary.

B.  PLAINTIFFS' INJURIES RESULT FROM THE PREDICATE ACTS OF DEFENDANT BOA AND DEFENDANT MERS IN CONSPIRACY.

A law review article once compared Defendant MERS to the two headed God Janus because MERS claims to be both the owner and the agent of the owner on every loan

where it appears.[7]   The analogy to Janus is ironic since MERS claims two heads, but actually has no head, being a shell company strictly controlled by the servicer members that own it and use it. (Comp. ¶16.)   Defendant BOA here refers to corporate officers of MERS as robo-signers, in apparent recognition of Defendant MERS' headlessness, but these MERS agents are actually employees of Defendant BOA and corporate officers of MERS making (both) their corporate employers liable for conspiracy. (ECF Doc. 21 p.9, fn.2.)

   In their 12(b)(6) MTD Defendant BOA claims no conspiracy can stand as Plaintiffs claims are premised on "recording of foreclosure notices," which are "privileged communications." (ECF Doc. 21 fn.3 citing Civ. Code § 2924(d)(1).)   Defendant again misstates  Plaintiffs' case. (Comp. ¶24.)   Whether or not this Court agrees with the plausibility of Plaintiffs' allegations, the allegations that Defendants BOA and MERS 1) recorded an ASSIGNMENT to Defendant BOA when Defendant BOA was not the beneficiary and 2) wiped the loan history from the MERS database to sever the connection to the true beneficiary, these allegations constitute Bank Fraud between financial institutions pursuant to 18 U.S.C. §1861 and a conspiracy charge can stand. *Iqbal*, 129 S. Ct. at 1950.

*//*

---

[7] Christopher Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory,* 53 Wm. & Mary L. Review 113.

IV.   DEFENDANTS VIOLATED THE FDCPA BECAUSE THEY WERE

NEITHER BENEFICIARY NOR SERVICER.

If Defendant BOA was servicing on behalf of a securitized trust there would have been a (recorded) ASSIGNMENT from the lender to the trust before a NOTICE OF DEFAULT was recorded.  This ASSIGNMENT to the trust is not required by California state law, but is required by the securitized trusts' Pooling and Servicing Agreement which requires a (recorded) ASSIGNMENT before the closing date of the trust and any foreclosure action by the servicer. *Glaski v. Bank of Am.*, 218 Cal. App. 4th 1079, 1085-86, 160 Cal. Rptr. 3d 449, 454 (2013.)   *Glaski* challenged the VOID nature of these assignments recorded after the closing date of the trust, but they *are* recorded because a recorded ASSIGNMENT is required by the trust before the servicer can foreclose. *Glaski,* supra at 1085.

Plaintiffs allege that Defendant BOA kept all of Plaintiff's payments from the time they took over servicing rights from COUNTRYWIDE and never serviced the loan for any beneficiary. (Comp. ¶28.)  Plaintiffs' allegation is evidenced by the (recorded) ASSIGNMENT of a MERS mortgage destined for securitization directly from the lender/ originator to a servicer that then claimed to be the beneficiary. (Comp. ¶s 42-44 & EX. F; RJN 1 & 2.) Plaintiffs allege that Defendant BOA ASSIGNED the loan to them so as to defraud the RESCAP/ HOMECOMING Bankruptcy and/ or the securitized trust which constitutes Bank Fraud in violation of 18 U.S.C. §1861. (Comp. ¶1.)

Defendant BOA makes an inherently false argument when they refer to themselves as a "former servicer" with power to enforce the power of sale clause in the deed of trust. (ECF Doc. 21 p.11, l. 19-20.)  Defendant cannot claim they are a "former servicer" when there is no evidence of a recorded ASSIGNMENT to the trust before the NOTICE OF DEFAULT was recoded. (Id; Comp. EX. F.)  The evidence is that Defendants were supposed to be acting as a servicer, yet they ASSIGNED the loan to themselves as beneficiary directly from the lender. (Comp. EX. F.)

The power of sale in Plaintiff's mortgage exists only if she is actually in default and only then on behalf of the proper beneficiary. (Comp. Exs. C ¶9 & I.)  Defendant BOA cannot claim they began foreclosure "when RUTH defaulted on her payments" because Defendant recorded a NOTICE OF DEFAULT on October 17, 2011 after Plaintiff RUTH A. ROSENBERG had made her October 1, 2011 payment and every prior payment on her loan modification since the first payment on October 1, 2009. (Comp. ¶48-49.)  Defendants violated the FDCPA with "a false and misleading representation" by recording the NOTICE OF DEFAULT because it was an attempt to collect a debt on behalf of themselves as beneficiary when they were not the beneficiary. (*Heintz v. Jenkins*, 514 U.S. 291, 292, 115 S.Ct. 1489, 1490 (1995); 15 U.S.C. §1692e; Comp. ¶73 & Ex. I.)  This recorded NOTICE by Defendant BOA, as well as the reports to the credit bureaus regarding Plaintiff's default, were also "abusive and unfair" since Plaintiff was

not in default at the time the credit bureaus were notified and at the time the NOTICE

OF DEFAULT was recorded. (Comp. ¶s 70 & 73 & Ex.I; 15 U.S.C. §1692e.)

V.     PLAINTIFFS HAVE PLED A VIOLATION OF THE BUSINESS AND

        PROFESSIONS CODE §17200 ET SEQ. BECAUSE THEY HAVE PLED

        VIOLATIONS OF LAW AND DAMAGES

It is "unfair competition" when one bank steals a loan from another bank's creditors,

as Plaintiffs allege, because it is unlawful, unfair, and a fraudulent business practice.

*Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1499, 82 Cal. Rptr. 2d 368, 371 (1999);

Cal Bus & Prof Code § 17200.  Defendants are in violation of federal criminal statutes

including 18U.S.C. §1341, 18U.S.C. §1344, 18U.S.C. §1962(c), 18U.S.C. §1962(d), and

15 U.S.C. §1692e and "[t]he UCL borrows violations of the other laws . . . and makes

those unlawful practices actionable under the UCL". *Lazar,* supra at 1505.  Under the

"fraudulent" prong of the UCL a plaintiff must show that members of the public are

likely to be deceived, but not that Plaintiff was actually deceived. *Buller v. Sutter*

*Health*, 160 Cal. App. 4th 981, 982, 74 Cal. Rptr. 3d 47, 49 (2008)

A private plaintiff has standing under the UCL only if he "suffered injury in fact and .

. . lost money or property as a result of the unfair competition. *Griley v. Nat'l City*

*Mortg*., 2011 U.S. Dist. LEXIS 5061, *6, 2011 WL 219574 (E.D. Cal. Jan. 18, 2011);

Cal. Bus. & Prof. Code ¶17204.  The UCL requires a loss of "money or property"

sufficient to constitute an "injury in fact" under Article III of the Constitution and also

requires a "causal connection" between the UCL violation and the injury in fact. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010.)  Plaintiffs "suffered injury in fact" and "lost money and property as a result of the unfair competition" because they made mortgage payments to the wrong beneficiary and because Defendants BOA and recorded a NOTICE OF DEFAULT when Plaintiff RUTH A. ROSENBERG was not in default. (Comp. ¶s 70 & 73 & Ex. I; Cal Bus & Prof Code § 17200.)


   CONCLUSION

   A civil complaint under the Racketeer Influenced and Corrupt Organizations Act is strictly reviewed and difficult to properly allege, however Plaintiffs believe that the criminal acts at issue here, and the causal link to Plaintiffs' damages, warrant RICO penalties.  Plaintiffs seek leave to amend and perfect if their allegations are insufficient or unartfully pled.



Dated:   November 6, 2015          ADVOCATE LEGAL


                    By:  /s/  Susan M. Murphy                    .
                        Susan M. Murphy
                    Attorney for Plaintiffs
                    RUTH A. ROSENBERG &
                    ALFREDO ROSENBERG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28